EDWARD KENNEDY ET AL. v. J. M. BENDER.

No. 2070. Decided March 15, 1911.

**1.—Fraud—Condonation—Estoppel—Sale of Corporate Stock.**

A transaction in the management of a corporation by which a stockholder, taking an active part therein, received benefit (a gratuitous increase in the amount of his stock accompanied by a surrender of shares by other stockholders) being a dealing between the corporation as such and its members, was not such transaction between the stockholder personally and others (the persons so surrendering their shares) as to estop him, as matter of law, from maintaining an action against them for damages for fraudulent misrepresentations inducing him to purchase his original shares. Nor did it, unaccompanied by other evidence of an intention to condone the fraud, furnish evidence of such estoppel in fact. (Mr. Justice Ramsey dissents.)    (Pp. 150-152.)

**2.—Same—Case Stated.**

Plaintiff was induced to purchase at par, shares in the stock of a corporation, by false representations by defendants, who held a majority of the stock for which they had paid nothing, that the same had been paid for in money. After learning of the fraud, the company being in difficulties, plaintiff assented to proceedings at a stockholders' meeting by which the holders of such unpaid stock surrendered their shares to the company and same were offered for sale to the public at fifty percent of par value, plaintiff on motion offered by himself, receiving gratuitously extra shares to the amount already held by him, to equalize his holdings, proportionally to the amount paid, with such expected purchasers. Held:

(1)   That such transaction did not estop him, as matter of law, from maintaining action personally for damages against those whose fraudulent representations had induced him to purchase his original stock.

(2)   That his mere participation in the transactions had at the stockholders' meeting could not be held to evidence an intention to condone the fraud of the individuals inducing his purchase of stock; but that his estoppel from maintaining the action might be established by proper evidence showing such transaction to be intended to condone and to waive his right of action, this being a question of intent and to be proven as a matter of fact. (Mr. Justice Ramsey dissents.)    (Pp. 150-153.)

Questions certified from the Court of Civil Appeals, First District, in an appeal from Harris County.

*S. Taliaferro* and *G. L. Teat,* for appellants.—In an action for deceit by an alleged defrauded subscriber for stock against the agents of a corporation, for fraudulently inducing him to subscribe for stock, he can not recover, where, after full knowledge of all fraud, he agreed with the corporation, at a stockholders' meeting, to have his stock doubled free of charge, so as to compensate him for the depreciated value of the stock caused by existing conditions alleged to have been concealed from him at the time he entered into the original purchase. Kingman & Co. v. Stoddard, 29 C. C. A., 413, 85 Fed., 740; Simon v. Goodyear Metallic Rubber Shoe Co., 105 Fed., 573, 44 C. C. A., 612, 52 L. R. A., 745; McDonough v. Williams, 8 L. R. A. (N. S.),

452, and note; St. Johns v. Hendrickson, 81 Ind., 350; McLean v. Clapp, 141 U. S., 429; Minter v. Hawkins, 117 S. W., 172; Barber v. Morgan, 76 S. W., 319; Lear v. Paige, 42 S. W., 808 (Tenn.); Hunt v. Hardwick, 68 Ga., 100; Nonnan v. Sutter County Land Co., 81 Cal., 1; Thompson v. Libby, 36 Minn., 287; Western Electric Co. v. Hart, 103 Mich., 477; Lee v. McClellan, 120 Cal., 147; People v. Stephens, 71 N. Y., 527; Schmidt v. Mesmer, 116 Cal., 267; Doherty v. Bell, 55 Ind., 205; Veral v. Veral, 63 N. Y., 45; Upton v. Tribilcock, 91 U. S., 55; Fitzpatrick v. Flannagan, 106 U. S., 648; Grimes v. Sanders, 93 U. S., 55.

*Wilson & Cole*, for appellee.

Mr. Chief Justice Brown delivered the opinion of the court.

Certified Questions from the Court of Civil Appeals of the First Supreme Judicial District.

"The above case is now pending in this court on motion for rehearing and the questions here certified are material to a disposition of such motion.

"The following is a statement of the matters material to a decision of such questions.

"J. M. Bender instituted this action in the District Court to recover $400.00 actual and $500.00 exemplary damages for willful fraud and deceit practiced upon him by defendants, Kennedy and McKallip, whereby he was induced to purchase four shares of stock in a corporation, of the par value of $400.00, for which he paid that amount in cash. The fraudulent representations consisted of statements that $78,000.00 of the capital stock of the corporation, capitalized at $100,000.00, had been paid in, in cash, and that the corporation was in a sound financial condition. Kennedy was one of the directors, and the other defendant, McKallip, was the president of the corporation each owning $25,000.00 of the stock, for which they had, in fact, paid nothing and the corporation being bankrupt at the time.

"Among other defenses pleaded by defendants it was alleged that after discovery by plaintiff of the fraud, and of the falsity of the representations of defendants whereby he had been induced to part with his money, he had ratified and affirmed the contract and had so condoned the fraud as to be estopped to set it up as a basis for this action. It was specially alleged that after the discovery by plaintiff of the falsity of the said representations there was a meeting of the stockholders at which Bender was present when the proceedings were had that are hereinafter set forth.

"Upon a trial with a jury there was a verdict for plaintiff for $400.00 actual and $250.00 exemplary damages, for which judgment was rendered. Defendants brought the case to this court on appeal and on hearing of the appeal it was held that the evidence as to the fraud and deceit was sufficient to entitle plaintiff to recover both exemplary and actual damages in the amounts adjudged, but that by reason of the following facts, which were found to have been established by the undisputed evidence, plaintiff had condoned the fraud and was

cstopped to set it up as a basis for this action. This can best be understood by the following quotation from the opinion:

" 'The only ground of ratification or condonation after knowledge of the fraud entitled to consideration, is that based upon the action of appellee at the stockholders' meeting of November 13, 1906, some weeks after, according to his own testimony, he had acquired full knowledge of the insolvent condition of the corporation and of the falsity of the representations that had been made to him as an inducement to purchase the stock. This is what occurred at that meeting of stockholders. Appellants McKallip and Kennedy and Frank Greenaway, in view of the financial condition of the corporation, then trembling, as was afterwards developed, on the verge of bankruptcy, offered to donate to the corporation certain shares of their stock, that is, Kennedy $24,000.00 worth, McKallip the same, and Greenaway $5,000.00 worth, with the understanding that the certificates therefor be cancelled and the stock, or so much thereof as might be necessary, be resold for the benefit of the company at such prices as might be determined by the Board of Directors, the donation being made for the purpose of relieving the financial condition of the company and putting it on its feet as a going concern. A resolution was offered to accept this proposition, the stock to be placed upon the market for sale at a minimum price of fifty cents on the dollar, the proceeds to be used to pay the debts and operating expenses of the concern, and any residue to be put in the treasury for the use of the company. This resolution having been read and seconded, the minutes show that appellee Bender offered an amendment in substance that inasmuch as certain stockholders, himself among the number, had bought and paid for their stock at par, the stock so held by them should be increased so as to give them two shares for each share so held, that is, to double their stock and make it really cost only fifty cents on the dollar of its face value. Appellee testified that one Blair, another stockholder who had bought at par, offered this amendment and he seconded it, but that is immaterial. As amended the resolution was unanimously adopted, and it is clearly and undisputably shown that appellee was present and acted with the others in adopting the amended resolution.'

"The trial court refused to submit this issue to the jury.

"Upon the facts above stated this court reversed the judgment and rendered judgment for appellants. As will be noticed from the opinion, Associate Justice Reese dissented from this conclusion. The jurisdiction of this court is final and such dissent does not require that the point of difference be certified, but inasmuch as the parties have no right of appeal and the majority are in doubt as to the correctness of their conclusion, and in view of the general importance of the question, we respectfully certify to your Honors the following questions:

"First Question. Do the foregoing facts with regard to the action of the plaintiff Bender at the stockholders' meeting, of themselves, as matter of law, operate as an estoppel upon plaintiff and bar him of his right to recover in this action?

"If this question be answered in the negative, we certify this.

"Second Question. Upon the facts stated, which were established by the undisputed evidence, should this issue of estoppel, through condonation of the fraud, have been submitted to the jury?"

To the first question we answer, No. When Bender purchased the stock of the corporation under the fraudulent representations of the appellants he acquired title to the stock and became obligated to pay for it according to his contract. He had no contract with the appellants, therefore, as to them, he had not the right of rescission. His only remedy was an action against the appellants for damages caused by the fraudulent representations whereby they induced him to purchase the stock. Hence nothing that Bender did in the exercise of his rights as a stockholder in the corporation can be looked to as in any way affecting his claim for damages against appellants, unless it be shown by the evidence that his purpose in so acting was to waive his right against them, or that in someway he acquired something of value from the appellants, with the purpose and intent of waiving his right of action for damages. 20 Cyc. p. 93; Schmidt v. Mesmer, 116 Cal., 271. "The question of waiver, however, is largely one of intent. Hence acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of biding by the contract and waiving all right to recover for the deception. Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, can not be held to operate as a waiver." (20 Cyc. p. 93.)

The statement submitted to this court does not show that the additional stock was actually issued to Bender, but for the purposes of this opinion we will assume that it was issued and delivered. When the stock was donated by the three stockholders it was for the purpose of relieving the financial condition of the company, and shows no purpose to compensate Bender for his damages. That purpose did not exist either on the part of the donors, or on the part of the corporation, or on the part of Bender. The resolution which was offered in the stockholders' meeting had reference to the disposition of the stock, that is, that it should be sold at not less than fifty cents on the dollar and the proceeds applied, as stated in the resolution, to the purposes of the corporation. The amendment which was offered and which Bender either offered or seconded had reference also to the disposition of the stock, that is, that an amount of it equal to that which was held by certain of the stockholders should be given to them in order to make their stock equal to that of other stockholders. In making the donation appellants had no purpose, as we have ·before said, to repair Bender's loss, neither had the corporation in ·view anything with reference to Bender's right for damages and Bender was without any *intention* to waive his claim for damages. How can it be said then that by his acceptance of the stock from the corporation he waived a claim for damages against individuals? Upon what principle can an estoppel be invoked in favor of appellants when their action had no reference to their· transaction with Bender, or against the latter, who manifested no purpose of surrendering any right that he had against appellants. We are unable to see ·in the facts stated by

the Court of Civil Appeals wherein Bender in any way evinced a purpose to surrender his claim for damages against appellants and accept the stock from the corporation.

To the second question we answer, that the facts stated by the court do not raise any issue as to Bender's waiver of his right of action for damages against appellants, therefore, we see no reason why the court should have submitted such an issue. However, it may be that circumstances existed which were in testimony before the jury and not certified that would have justified a jury in coming to the conclusion that Bender's real purpose of making this transaction was to save himself from the damages which had accured to him through the fraud of the appellants and that he *intended* thereby to relinquish his claim against said appellants, and, if there be any testimony which would justify such conclusion, then the issue should have been submitted to the jury.

MR. JUSTICE RAMSEY, dissenting.

The certificate transmitted to us by the Court of Civil Appeals while doubtless intended to cover fully the case and the entire and precise case pending before them does not state the facts quite so fully as same appear in the opinion which accompanies same. I think in view of the reference in the certificate to the opinion of the court that said opinion may and should be looked to in explanation of certain of the facts and dates stated generally in the certificate before us. It appears that Bender had for some little time before November 13, 1906, been fully aware of the financial condition of the corporation in which he had purchased stock. It is also shown that some little time before the date last named he had approached McKallip, one of the defendants in the court below, as to the financial condition of the company, who said to him that he (McKallip) "would pull it out of the hole." With full knowledge, therefore, of the condition of the company of which he was an employee and relying on McKallip to pull the company out of its financial difficulties or at least having such promise in mind the stockholders' meeting of November 13, 1906, was held. At this meeting it was proposed by Kennedy and McKallip to surrender each $24,000.00 of the capital stock issued to and owned by them and by Greenaway to surrender to the company $5,000.00 of his stock to be cancelled and instead thereof other certificates of stock issued and sold "for the purpose of relieving the financial condition of the *company* and putting it on its feet as a going concern." Clearly this was an act designed and the only effect of which could be to surrender for the benefit of the company $53,000.00 in stock of same, theretofore owned by the three parties named. A resolution was offered to accept this proposition and that the stock be placed on the market at a *minimum* price of fifty cents on the dollar, the proceeds to be used to pay the debts of the company and any residue to be put in the treasury for the use of the company. Thereupon it is shown that "this resolution having been read and seconded, the minutes show that appellee Bender offered an amendment in substance that, inasmuch as certain stockholders, himself among the number, had bought and paid for their stock at par, the stock so held by them should be

increased so as to give them two shares for each share so held, that is, to double their stock and make it really cost fifty cents on the dollar of its face value.    Appellee testified that one Blair, another stockholder who had bought at par, offered this amendment and he seconded it, but that is immaterial.    As amended the resolution was unanimously adopted, and it is clearly and undisputably shown that appellee was present and acted with the others in adopting the amended resolution."    The effect of this resolution, appellant's acceptance of it and the fact that he either did in fact or was entitled to avail himself of its terms, had the effect to take and withdraw from the company shares of the par value of the amount then held by Bender and to secure to himself from defendants a consideration evidently deemed by all the parties sufficient to indemnify him for any difference in value between the price in fact paid by him for the shares purchased by him and the *minimum* price at which they were by all the parties valued in the resolution above referred to.    Unless we ascribe to Bender the wicked purpose of deceiving the public and perpetrating on intending purchasers a patent swindle we must believe that he in common with other stockholders believed this stock to have some value and the resolution is some evidence, and I think strong evidence, that the stock was worth at least fifty cents on the dollar. With this resolution passed, not only acquiesced in by appellant, but procured by him, whereby his stock was doubled at the expense of the surrender of part of their shares by the appellants, he appeared satisfied, accepted additional stock from his vendors and made no further complaint but went on his way serenely until December 26 thereafter, almost a month and a half, when the company was placed in bankruptcy.    Evidently from all the facts it must be clear that appellee believed the stock moving to him from appellants was worth something.    He says in his testimony that he relied on the statement of McKallip that he "would pull it out of the hole."    If believing the stock obtained from appellants, without other consideration, was of sufficient value to reimburse and make him whole on his investment, he could undoubtedly as effectually conclude himself as if payment had been made to him in money.    That he did conclude himself and that the facts show this without dispute I am strongly inclined to believe.    That the facts are sufficient in support of this issue to require its submission to the jury I have not the shadow of a doubt.    The opinion of Associate Justice Reese who wrote the opinion of the court in opposition to his own views, is to my mind convincing, but in view of my inability to agree with my associates, whose long service and recognized learning will give their opinion such general acceptance, has seemed to make it appropriate for me to write my views here at length though in doing so I shall to some extent but repeat the opinion of the Court of Civil Appeals and largely avail myself of the authorities cited by them.

It is the settled law in this State that there is a substantial distinction between actions for rescission and an action, such as this, for deceit.    It is clear that in actions for deceit the person aggrieved may elect to affirm the contract, when executed, retain what he has received, and sue for such damages as he has suffered.    The extent

and circumstances under which he may do this are, as I believe, not only correctly but admirably stated in the recent case of McDonough v. Williams, 77 Ark., 261, 8 L. R. A. (N. S.) 452, 92 S. W., 783, where the Supreme Court of Arkansas quotes with approval the following excerpt from the Supreme Court of Minnesota, contained in Thompson v. Libby, 36 Minn., 287, 31 N. W., 52: "If the contract be executed in whole or in part, before the fraud is discovered, it is well settled that the purchaser need not rescind, but may retain the property and also bring his action for damages on account of the deceit. But to allow a purchaser who has discovered the fraud while the contract is still wholly executory to go on and execute it, and then sue for the fraud, looks very much like permitting him to speculate upon the fraud of the other party. It is virtually to allow a man to recover for self-inflicted injuries. The fraud is really consummated, and the damages incurred, by the acceptance of the property and paying for it. And if this is done after the fraud is discovered, the purchaser can not say that he sustained this damage by reason of the fraud. It seems to us that if a party discovers the fraud before he enters upon performance of the contract, he must decide whether he will go on under it or rescind. He can not say it is a good contract for the purpose of authorizing him to ·accept the property, but not binding on him as to the price to be paid for it." It is clear, therefore, that but for the transactions of the stockholders' meeting of November 13, 1906, Bender on proof of the facts found by the court would be entitled to recover. Did this transaction, in the light of what had occurred, and was known to him therefore, and of what followed, either prove as a matter of law or tend to show as a conclusion or inference of fact that he had waived his cause of action? That such was the effect of his conduct, in the light of all the circumstances, is supported by the highest authority as well as, I conceive, by the soundest legal reason. The following is stated to be the law by the American and English Encyclopaedia of Law, Vol. 14, p. 171: "The rule that affirmance of a contract with knowledge of fraud does not bar an action for damages is subject to the limitations that the party defrauded must stand towards the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it. If he does so he waives the fraud."

In the case of Schmidt v. Mesmer, 116 Cal., 267, which was an action of deceit for damages for alleged false and fraudulent representations with respect to a certain lease, that court said: "The appellants took possession of the premises on the 1st of January, 1894; and, if the respondent made the representation alleged, the falsity of that representation must have been discovered, and it was admitted that it was discovered, immediately after the plaintiffs took possession. The averments of the complaint show that. Nevertheless, they occupied the premises until the commencement of this suit, which was about seventeen months afterward, without making any complaint whatever as to said false representations, or giving respondent any notice whatever that such false representation was claimed. Some

time in January, 1895, or later, the appellants asked the respondent to reduce the rent, but without any intimation whatever that any alleged false misrepresentation, as charged in the complaint, had been made by respondent. Respondent refused to reduce the rent.

"Appellants failed to pay all the rent for the month of February, 1895, and failed to pay any of the rent for the months of March and April, but asked further time to pay said rent, and were allowed by respondent's agent to give their note·for said rent, payable six months thereafter, which note they gave. Said note was not paid when due, nor was the rent for said months of March and April paid. This suit was commenced in the month of May, 1895.

"It is no doubt the law, that while, where a party seeks to rescind a contract into which he was induced to go by the fraudulent representations of another party, he must rescind at once upon the discovery of the fraud, and restore the other party, as near as may be, to his former condition, yet he may elect to go on with the contract, and sue to recover damages for the deceit, without giving any warning to the other party that he intends at some future time to charge him with fraud. This rule, when applied to a continuous contract which runs through a series of years, sometimes, no doubt,·works an injustice to the party charged with fraud. It is true that one actually guilty of fraud is not entitled to much consideration; but the real difficulty usually is to determine whether or not the alleged fraud actually existed, and the issue has generally to be determined upon conflicting testimony, and in accordance with the preponderance of evidence. In such a case it is evident that the party who keeps his intended charge of fraud secret for years ·has a great advantage in preparing for a future intended action, which he alone anticipates, over his adversary, who has had no intimation of such action or such charge of fraud, and has had no reason to preserve or discover evidence concerning it. But this rule, which relieves a party when he chooses to sue for damages from many of the acts required of ·him when he elects to rescind, is subject to some limitations. If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud.

"Cooley says: 'The fraud may be waived by an express affirmance of the contract. Where an affirmance is relied upon, it should appear that the party having the right to complain of the fraud had fully, and with a full knowledge of his rights, in some form clearly manifested his intention to abide·by the contract, and waive any remedy he might have had for the deception.' (Cooley on Torts, 505.)

"In Doherty v. Bell, 55 Ind., 205, the court say: 'If the appellee, with full knowledge of all the facts, as we think it fair to presume from the allegations in the reply it was intended to charge he had, and after the appellants became the owners of it, agreed to pay the note, provided a certain extension of time was allowed him, and in

consideration thereof such an extension was given him, we must regard him as having ratified the execution of the note, and as having waived whatever objection or defense he may have had to the manner of its execution.'

"In St. John v. Hendrickson, 81 Ind., 350, the court say: "We fully recognize and approve the rule that a party may retain what he receives, stand to his bargain, and recover for the loss caused him by the fraud. We do not mean to run counter to this rule. We neither hold, nor mean to hold, that affirmance by retention of the thing bargained for cuts off an action for damages. We do hold that where a party, with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract; and waive all right of action for fraud, he can not maintain an action for the original wrong practiced upon him. Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. . . . Nor are we unmindful of the settled rule that the defrauded party has an election of remedies. . . . We do decide that where a party, with full knowledge, declines to repudiate a transaction known to him to be fraudulent, and fully and expressly ratifies it, he can neither rescind nor maintain an action for damages.'

"In Edwards v. Roberts, 7 Smedes & M., 544, the court say: 'If a party has knowledge that he has been defrauded, and yet subsequently confirms the original contract by making a new agreement and engagement respecting it, he thereby waives the fraud, and abandons his claim to equitable relief.'

"In Negley v. Lindsay, 67 Pa. St., 217, 5 Am. Rep., 427, the court say: 'Judge Baldwin, who may be regarded as belonging to our judiciary, in Blydenburgh v. Welsh, Bald., 338, held that if, after a party has acquired a knowledge of facts tending to affect a contract with fraud, he offers to perform it on a condition which he has no right to exact, he thereby waives the fraud, and can not set it up in an action on the contract. This, said he, is a waiver of the objection to the contract on the ground of fraud, if he was informed of all matters which bore upon that question.' (See, also, Blydenburgh v. Welsh, supra; Kerr on Fraud and Mistake, 298; People v. Stephens, 71 N. Y., 527; Nounnan v. Sutter County Land Co., 81 Cal., 1.)"

I have carefully examined the decisions referred to in the foregoing opinion and they all, in effect, and some of them directly, support the decision in Schmidt v. Mesmer, supra. I can not agree that the statement in the opinion of the majority, to the effect that, "when the stock was donated by the three stockholders, it was for the purpose of relieving the financial condition of the company and shows no purpose to compensate Bender for his damages. That purpose did not exist either on the part of the donors or on the part of the corporation or on the part of Bender"—is a correct statement of the transaction as a fact or as a matter of law.

It may be conceded that the original offer of these three donors contemplated only a rehabilitation of the company in which, if Bender profited at all, it would only be in the same sense and to the same extent and degree as any other stockholder. If this resolution had been adopted unamended, then I would concede that the evidence did

not show such benefits flowing to Bender as would or should have estopped him.    But Bender, against the interest of the company, to the extent of his own interest, prevented the adoption of this resolution and demanded that these donors donate to *him* as much, in par value, as the stock theretofore purchased by him.    He thus obtained a special benefit without compensation to the company and one flowing from the men who he knew, if this testimony is to be believed, had deceived him as to the value of the stock sold him.    Why should they give him, without payment to themselves or compensation to the company, additional stock except on the theory of their obligation so to do in view of all the facts and except on the theory and in the belief and authorized assumption, considering his silence and the absence of further demand, that this was and would be satisfactory.

It must be remembered that he then knew and for some time had known, as he testifies, of the misrepresentations made to and of the fraud practiced on him.    He had theretofore complained to McKallip. He knew therefore that the defendants were advised of his knowledge of the facts and of his cause of action against them.    Now it was with reference to this condition of affairs that they all acted.    I concede that it is always a matter of intention as to whether in such cases there is a waiver.    But this intent may always be proven by circumstances or inferred as a conclusion of fact from circumstances fairly justifying same.    Sometimes, too, the law conclusively ascribes such intent to parties where their actions are inconsistent with any other idea.    Let it be remembered too that all the parties had acted and voted on the idea and in the belief that the stock was worth fifty cents on the dollar.    That the concern thereafter went into bankruptcy and the stock afterwards became of less value or of no value could not alter the fact or change the rights of the parties.    If at the time of the transactions noted above the parties believed the stock had a certain value, the effect and true intent of their conduct will be determined as if it in fact had such value.    We must remember too that nothing is more unstable or fluctuating in value than such property.    A stock today may be in strong demand and in six weeks, due to a collapse in the money market, a storm, flood or drought affecting the market for output of a factory or from dishonesty or inefficiency of management, it may become of practically no value. The complete silence of Bender for six weeks, his failure to complain or demand other or further settlement or compensation for the wrong done him is, under all the circumstances of this case, the strongest evidence that he had accepted the additional stock as in full settlement of loss sustained by him.    He can not and ought not to be allowed to play fast and loose with the proposition.    He can not by turns blow hot and cold.    He can not be allowed, in effect, to compel an issue of stock to himself, flowing from his vendors, in an amount, at a value fixed by all the parties, sufficient to fully compensate him for any loss sustained or wrong done him, and then when the lapse of time and changed conditions have disappointed his expectation, disregard this settlement and proceed, as if nothing had occured, for further and additional reimbursement in money.    To permit this is to allow him to take all the advantages of the first adjustment, receive additional

stock from his vendors, hold same and speculate on the same, accept all the benefits and profits of the success of the business, and if the business proves, as happened in this case, a disappointment, then to repudiate the whole transaction, escape its legal effect, and demand of his vendors compensation by way of damages in money for the loss sustained. Holding these views, which I do not deem it necessary to further elaborate or illustrate, I am driven to the necessity, most reluctantly, to enter my dissent.