**CULVER v. HAGGARD. (No. 638–4059.)**

(Commission of Appeals of Texas, Section A.
April 1, 1925.)

1. Mines and minerals ☞6—Contract to sell mineral 'permit, which was never issued, tainted with fraud.

Contract to sell mineral permit which stated that seller was owner of permit, where such was not the case and permit had in fact not been issued, *held* tainted with fraud.

2. Bills and notes ☞520—Renewal of note by buyer of mineral permit never issued, held shown to have been without intention to waive fraud.

Where buyer of mineral permit which had never been issued gave note to vendor's agent, evidence *held* to show that when note was renewed he still thought permit might be issued, and did not intend to waive fraud.

3. Fraud ☞50—Burden of proof on party claiming waiver.

Where fraud in transaction is clearly established, burden of proof is on party trying to show waiver thereof.

4. Mines and minerals ☞6—Consideration for note to purchase mineral permit which was never issued failed.

Where buyer gave notes for mineral permit which was never issued, consideration therefor wholly failed, so as to prevent recovery thereon.

5. Brokers ☞39—Agent to sell mineral permit charged with knowledge of nonexistence of permit.

Where state permit to prospect for oil had never been issued, agent of purported owner *held* charged with full knowledge of nonexistence so as to prevent his recovery on note given him by prospective buyer as commission for sale.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. E. Culver against H. H. Haggard. Judgment for defendant was affirmed in Court of Civil Appeals (252 S. W. 1092), and plaintiff brings error. Affirmed.

Weeks, Morrow & Francis, of Wichita Falls, for plaintiff in error.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for defendant in error.

CHAPMAN, J. On February 13, 1920, J. B. Irwin and H. H. Haggard entered into a contract, the terms being that Irwin sold to Haggard a permit issued by the state of Texas to prospect for oil and gas on 1,000 acres of land more or less in Wichita county, Tex. The contract stated that Irwin is the owner of said permit. By the terms of the contract, Haggard agreed to pay for said permit $10,000 in cash, and $40,000 additional to be paid out of the proceeds to be received from the sale of stock or certificates of interest in a company or joint-stock association to be organized by Haggard for the purpose of developing the land mentioned in the permit, for oil and gas purposes. J. E. Culver was the agent of Irwin in negotiating the deal, and was to receive from Irwin a commission of $5,000. Haggard paid Irwin $5,000 in cash, and Irwin requested Haggard to pay the other $5,000 to Culver.

There was no additional consideration flowing to Haggard as an inducement for him to pay the remaining $5,000 to Culver rather than to Irwin, and Culver did not release Irwin from his obligation to pay him the $5,000 commission. Three days after the execution of the contract between Irwin and Haggard, Haggard learned that Irwin did not own the permit mentioned in the contract, but that an application for such permit had been made by one J. C. O'Guinn, who seems to have been acting in connection with Irwin in the deal with Haggard. The permit was never issued, and there is no direct proof that any further effort was made to procure its issuance. Haggard did not pay the $5,000 to Culver, but about March 12, 1920, executed to said Culver a note for said $5,000, due 90 days after date. At the time Culver received this note, he executed to Haggard a purported receipt as follows:

"Received of H. H. Haggard his note for $5,000 made payable to J. E. Culver being the commission in full on sale of mineral permit to be issued to J. C. O'Guinn on certain land described in contract J. B. Irwin to H. H. Haggard which J. E. Culver sold to H. H. Haggard, I agree to hold H. H. Haggard harmless from all other parties interested with me in the sale of this land to said H. H. Haggard. This note for $5,000 when paid will liquidate all claims held by me against J. E. Edison and H. H. Haggard for commission on said sale.
"Signed this 12th day of March A. D. 1920.
"J. E. Culver."

When this note fell due, Haggard executed to Culver two notes, each dated June 11, 1920, one for $1,012, due 45 days after date, and one for $4,100, due 90 days after date. Upon the failure of Haggard to pay the two notes last mentioned, Culver brought suit on same, and as a defense Haggard pleaded the fraud in the original transaction between him and Irwin, and in answer to this plea Culver pleaded that Haggard was estopped from pleading fraud in the original transaction, and had waived such fraud, because, first, of the execution of the original note from Haggard to Culver, after Haggard had ascertained the fact that the permit mentioned in the contract between Haggard and Irwin had not been issued, and second, the execution of the renewal notes sued upon.

The trial was before the court without a jury, and judgment was rendered in favor of Haggard, which judgment was affirmed by

the Amarillo Court of Civil Appeals, 252 S. W. 1092, first, upon the ground of total failure of consideration for the note sued upon, and second, upon the further ground that there was fraud on the part of Irwin in the original trade with Haggard and that Haggard, by his subsequent dealings with Culver, did not waive, and was not estopped from alleging and proving such fraud.

[1, 2] That the original transaction between Irwin and Haggard was infected with fraud cannot be questioned. The contract plainly states that Irwin is the owner of the permit, and the contract undertakes to transfer the permit to Haggard, and no claim is made by Culver that Irwin did own such permit. The question then arises, Did Haggard by his dealings with Culver, subsequent to the original contract, waive the fraud practiced on him in the original transaction? In Pomeroy's Equity Jurisprudence, vol. 2, § 964, p. 2090, we find this statement with reference to this question:

"If, on the other hand, the original undue influence still remains, or if the act is simply a continuation of the former transaction, or if the party wrongly supposes that the original contract or transaction is binding, or if he has not full knowledge of all the material facts and of his own rights, no act of confirmation, however formal, is effectual; the voidable nature of the transaction is unaltered."

This text is quoted with approval in the following cases: Fidelity Trust Co. v. Butler et al. (Ky.) 91 S. W. 676; Holt v. Holt, 23 Okl. 639, 102 P. 187; Gidney v. Chappell et al., 26 Okl. 737, 110 P. 1099; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584. On the same question we quote from 20 Cyc. p. 93:

"The question of waiver, however, is largely one of intent. Hence acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception. Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, cannot be held to operate as a waiver."

This text is cited with approval by the Supreme Court of Texas in Kennedy et al. v. Bender, 104 Tex. 149, 135 S. W. 524. In Cumberland Coal & Iron Co. v. Sherman, 20 Md. at page 149, we find this statement:

"Confirmation according to the books, must be a solemn and deliberate act, not fished out from loose expressions in a letter; and particularly where the original transaction was infected with fraud, the confirmation of it is so inconsistent with justice and so likely to be accompanied with imposition, that the court will watch it with the utmost strictness, and not allow it to stand but on the clearest evidence."

This statement is quoted with approval by the Supreme Court of Virginia in Wilson v. Carpenter, 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 831, and in Branch v. Buckley, 109 Va. 784, 65 S. E. 655.

There is nothing in the record to directly show that Haggard intended to waive the original fraud, but, on the other hand, the facts strongly tend to show that Haggard, both at the time of executing the original note, and the notes sued on, did not intend to waive such fraud. We think the receipt or memorandum issued by Culver at the time Haggard executed the original note on March 12, 1920, clearly shows that Haggard did not intend to waive any of his rights under the original contract with Irwin, but that he was expecting Irwin to make his contract good by having the permit to be issued to J. C. O'Guinn on the land described in the original contract between Haggard and Irwin, and in addition to this, among other things tending to show that he still expected the permit to be granted, Haggard testified as follows:

"When I made this note, I was still expecting them to get the permit. About two weeks later, Mr. Culver and some parties came in my office and told me that Peters was in Austin at that time and had the permit. I said, 'Well, we will get things fixed up in a few days.' When I renewed the notes, Irwin and Peters promised me—said that Edison had dropped out of the deal with all of these. I expected them all of the time to go ahead and complete the trade. I certainly did think there was a possibility of getting a permit up to the time that they sued me."

We think that the evidence shows that the act of Haggard in executing the notes to Culver was a continuation of the original transaction, and shows that Haggard was expecting the permit to be issued, and was still willing to be bound by the original contract on condition that Irwin purge himself of fraud by securing the permit that he claimed to own, and that all the facts, as found by the Court of Civil Appeals, do not show an intention on the part of Haggard to waive the fraud practiced on him in the contract with Irwin.

[3] Fraud in the original transaction having been clearly established, the burden of proof was on Culver to show the waiver and estoppel alleged, and this we think he has failed to do, especially when the facts must be given the most favorable construction that may be placed on them to the end that the judgment of the trial court may be upheld.

[4, 5] The subject of the contract between Irwin and Haggard was the permit to prospect for oil and gas on the land described in the contract. In the first paragraph of the contract, we find this significant statement:

"Witnesseth that party of the first part is the owner of a permit to prospect for oil and gas, issued by the state of Texas, and covering

the following described lot, tract and parcel of land located in Wichita county, Tex., to wit."

And following the description of the land by field notes there is this statement:

"That party of the first part has agreed to transfer said permit as to the above-described tract of land to party of the second part by two assignments, one to cover the east half of said tract, the other to cover the west half thereof, said assignments to be made for the consideration of $50,000, to be paid as follows: $10,000 in cash to be paid by party of the second part upon execution of this contract. * * *"

Provision is made for the payment of the remaining $40,000 as already stated herein. The notes sued on were not executed by Haggard for any indebtedness that he owed Culver, but were executed in part payment for the oil and gas permit that was the subject of the contract between Haggard and Irwin, and which Irwin stated that he owned, and in the contract obligated himself to convey to Haggard as a consideration for the $10,000 to be paid to him by Haggard. When the contract between Irwin and Haggard was made, the oil and gas permit, which was the subject of the contract, was not in existence, was never in existence, and therefore could not have been, and was not, transferred to Haggard as provided in the contract. It is thus made clear to us that the consideration for the execution of the notes sued on wholly failed, with all of which, Culver, as the agent of Irwin, was charged with full knowledge.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.