# INDEMNITY INS. CO. OF NORTH AMERICA v. STERLING.

### No. 2243.

Court of Civil Appeals of Texas. Beaumont.
June 17, 1932.

Rehearing Denied June 22, 1932.

Barnes & Barnes, of Beaumont, for appellant.

Fred A. White, of Port Arthur, for appellee.

WALKER, J.

On September 29, 1929, appellee, Dee W. Sterling, while discharging the duties of his employment with Gulf Refining Company in the city of Port Arthur, Jefferson county, Tex., fell from a scaffold and was injured very seriously in his spine and in other parts of his body. At the time of his injury he was receiving an average weekly wage of about $44. His employer, being within the provisions of our Workmen's Compensation Act, carried its compensation insurance with appellant. Appellant recognized its liability to appellee under its contract of insurance, and on account of his injuries paid him the maximum compensation of $20 per week for a period of twenty-five weeks, and then, on or about the 2d day of April, 1930, paid him a lump sum of $1,500 in a compromise settlement duly approved by the Industrial Accident Board, in full satisfaction of all claims accruing to him by reason of his injuries, received at the time and in the manner just stated. This suit was instituted by appellee in the district court of Jefferson county to set aside the compromise settlement. For grounds of relief he pleaded his injuries, as just stated; that his injuries resulted in his total, permanent incapacity to labor; that at the time he made the compromise settlement he did not know his true physical condition, but that appellant, through its local agent, W. Hilton Berger, did know his true condition but concealed that fact from him; that appellant, through its local agent, represented to appellee that he would recover from his injuries; that he believed these representations and relied upon them in making the settlement; that, as a further inducement for the settlement, appellant, through its said agent, represented to appellee that, if he did not recover, appellant would reopen his case and resume payment of the statutory compensation. It was further alleged that the representations made by appellant's agent to appellee, as an inducement for the settlement, were false when made, and were fraudulently made by appellant for the purpose of inducing him to settle his claim for much less than he was entitled to. It was further alleged that, though appellee's physical condition did not improve, appellant refused to

reopen his case and to pay him any additional compensation. The prayer was only that the compromise settlement be set aside and for general relief. Though appellee did not tender into court the money paid him by appellant in the compromise settlement, or any part thereof, he pleaded that it had been expended in the support of his family and in an effort to be cured of his injuries, and further that he was "unable to work and earn a livelihood and is unable to refund to the defendant herein such sums of money paid to him by it for compensation and, therefore, cannot place the parties in status quo, and in lieu thereof, this plaintiff agrees and tenders to the defendant credit for all money paid him by it." The trial was to a jury upon the following special issues, answered as indicated:

"Special Issue No. 1. Do you find that the injury received by the plaintiff Dee W. Sterling resulted in the total incapacity of the said Dee W. Sterling?" Answer: "Yes."

"Special Issue No. 2. Do you find that the injury received by the plaintiff resulted in the permanent incapacity of the plaintiff?" Answer: "Yes."

"Special Issue No. 3. Do you find that at the time of making the compromise settlement involved in this case, that the said Dee W. Sterling knew his own true physical condition?" Answer: "No."

"Special Issue No. 4. Do you find that at the time of making the said compromise settlement, that the said W. Hilton Berger knew the true physical condition of the said Dee W. Sterling?" Answer: "Yes."

"Special Issue No. 5. If you have answered Special Issue No. 4 'yes,' then do you find that the said W. Hilton Berger concealed from the said Dee W. Sterling the knowledge of his, Sterling's, true physical condition?" Answer: "Yes."

"Special Issue No. 6. Do you find that Dee W. Sterling would have made the compromise settlement mentioned if he had known his true physical condition?" Answer: "No."

"Special Issue No. 7. Did the said W. Hilton Berger tell the plaintiff Dee W. Sterling that if he, Sterling, would settle his claim for the sum of $1500, and his physical condition should not improve, or should become worse, that he, said W. Hilton Berger, would reopen his case and resume payment of compensation to said Sterling?" Answer: "Yes."

"Special Issue No. 8. If you answer Special Issue No. 7 'yes', then do you find that said Dee W. Sterling believed such statement to be true?" Answer: "Yes."

"Special Issue No. 9. If you have answered Special Issue No. 7 'yes', then do you find that the said W. Hilton Berger at that time intended to reopen said case and resume payment of compensation in said case, if the said Sterling did not improve, or should become worse?" Answer: "No."

"Special Issue No. 10. If you have answered Special Issue No. 9 'no', then do you find that the said Dee W. Sterling ratified the compromise settlement agreement, after he discovered that said Berger did not intend to re-open the case and resume payment of compensation in case he, Sterling, did not improve or should become worse?" Answer: "No."

"Plaintiff's Specially Requested Issue No. 1. If you have answered Special Issue No. 5 'yes', and only in that event, do you find that the said W. Hilton Berger concealed from the said Dee W. Sterling the knowledge of his, Sterling's, true physical condition for the purpose of obtaining the compromise settlement agreement?" Answer: "Yes."

On the jury's verdict, judgment was rendered in appellee's favor canceling the compromise settlement agreement.

Opinion.

On the undisputed evidence, the jury's findings that W. Hilton Berger knew the true physical condition of appellee and concealed that fact from him, at the time of the settlement, and that appellee did not know his true physical condition and would not have made the compromise settlement if he had known the nature and extent of his injuries, did not constitute actionable fraud. This is so because, on the undisputed evidence, appellee did not deal with W. Hilton Berger on this phase of his case, on a confidential basis. He did not rely upon Berger to furnish him information as to his true physical condition, but employed a doctor for this purpose and a lawyer to advise him of his legal rights, and on their advice made the settlement. The judgment of the court, therefore, has no support in the jury's answers to questions 4 and 5, and plaintiff's specially requested issue No. 1. However, the evidence clearly raised the issues, and was sufficient to support findings to the effect that, as a condition of the settlement, W. Hilton Berger, appellant's duly authorized agent, promised appellee, in the event his physical condition did not improve or should become worse, to reopen his case and resume payment of compensation; that appellee believed that Berger would keep this promise, but that Berger, at the time he made the promise, did not intend to keep it; that, though appellee was represented by an attorney who lived at Houston, W. Hilton Berger conducted this phase of the settlement personally with appellee, and that the compromise settlement, to this extent, was made by appellee and W. Hilton Berger, and was not referred to appellee's attorney for approval; that this phase of the compromise

settlement originated with Berger himself and was the principal inducement offered to appellee for the compromise settlement. The jury's verdict in appellee's favor on these issues constituted actionable fraud, sufficient to vitiate the compromise settlement. Appellant does not attack the jury's findings on these issues, but asks relief against the judgment on the following grounds:

After the settlement was made, and at a time when appellee had in his possession about $1,000 of the settlement money, he was fully advised of his true physical condition and of the extent of his incapacity; that is, from a further examination by competent physicians and surgeons he was led to believe that his incapacity was both total and permanent. After acquiring this information, he did not tender back to appellant the $1,000 of the compromise money held by him at that time, nor did he, when this suit was filed, make a tender of the unexpended portion of the compromise money, but used all of his money in the support of his family and in payment of doctor bills and hospital bills, in an effort to get well. He did not spend any of the money for property or in gambling. Appellee testified that about five months after his injuries he learned that Mr. Berger "didn't aim to keep his promise"; until that time he had believed Mr. Berger would keep his promise. After discovering the true nature of his injuries, he talked to Mr. Berger and learned that the compromise agreement was all fraud, that he had been defrauded. Mr. Berger refused to pay him, though he promised to pay him his compensation and doctor bills if he became disabled, but "he refused to do that. I went to him for treatment and they refused me treatment." Appellant pleaded against appellee the issues of ratification, estoppel, and waiver of "all rights to deny the binding effect of the settlement agreement."

The contention was made in the trial court, and renewed here, that the failure of appellee to tender back to appellant the unused portion of the settlement money and the retention and use by him of this money constituted ratification, as a matter of law. This contention is denied. Where a settlement has been made of an ordinary claim for damages for personal injuries and it is attacked on the ground of fraud, the general rule, as announced by 9 Tex. Jur. 350, is that "the plaintiff need not tender back the compensation received as a condition precedent to the right to sue upon the original demand." This rule is so clearly established by well-reasoned cases construing facts on all fours with the facts of this case that it would serve no useful purpose to review them in this opinion. The following authorities are in point on this issue: Indemnity Ins. Co. of N. A. v. Kelley (Tex. Civ. App.) 44 S.W.(2d) 756; International & G. N. R. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189; Galveston, H. & S. A. R. Co. v. Cade (Tex. Civ. App.) 93 S. W. 124; Texas & P. R. Co. v. Jowers (Tex. Civ. App.) 110 S. W. 946, 949; Cattle Raisers' Loan Co. v. Sutton (Tex. Civ. App.) 271 S. W. 233; Lumbermen's Reciprocal Ass'n v. Henderson (Tex. Com. App.) 15 S.W.(2d) 565; New Amsterdam Casualty Co. v. Harrington (Tex. Civ. App.) 11 S.W.(2d) 533; Benson v. Travelers' Ins. Co. (Tex. Civ. App.) 40 S.W.(2d) 966; Maryland Casualty Co. v. Meyer (Tex. Civ. App.) 41 S.W.(2d) 291; Texas Jurisprudence, Vol. 9, p. 350, par. 17; Employers' Indemnity Corp. v. Woods (Tex. Com. App.) 243 S. W. 1085; Culver v. Haggard (Tex. Com. App.) 270 S. W. 846; Kennedy v. Bender, 104 Tex. 149, 135 S. W. 524.

Nor do the facts, as stated, constitute "waiver" and "estoppel," as a matter of law. The difficulty of stating a general rule as to what will constitute "waiver or estoppel" or "ratification," to assert fraud in actions of the character now under discussion, is generally recognized. It is said by 27 C. J. 22, that "each case in which the question arises must be considered and disposed of upon its own special facts, the underlying question being one of intent." If the defrauded party does an act indicating his intention to stand to the contract and waive his right of action for the fraud, the law says he cannot maintain an action for the original wrong. But the mere fact that he has retained the money paid him as compensation for the fraudulent contract does not, as we have said above, constitute either ratification, waiver, or estoppel. These issues are established by acts in affirmance of the contract only where such acts "are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception." Acts which do not indicate any intention to waive the fraud do not operate as a waiver. Corpus Juris, as cited above. See, also, Kennedy v. Bender, supra, 104 Tex. 149, 135 S. W. 524; Grabenheimer v. Blum, 63 Tex. 369; Winters v. Coward (Tex. Civ. App.) 174 S. W. 940; Texas Harvester Co. v. Wilson-Whaley Co. (Tex. Civ. App.) 210 S.W. 574. Against appellant's contention, the facts stated clearly raised the issue that appellee, after being advised of his true physical condition, with reasonable diligence called upon appellant to keep its bargain with him by reopening his case and resuming payment of compensation and repudiated the compromise settlement when appellant refused to perform the conditions upon which it was made. Under the general principles of law just discussed, the issues of "ratification," "waiver," and "estoppel" were not issues of law, but were fact issues for the jury, and therefore appellant was not entitled to an instructed verdict. For the most part the authorities cited by appel-

lant to sustain its propositions of an instructed verdict on these issues deal with exchange of property. In Texas & P. R. Co. v. Jowers, supra, Judge Hodges, speaking for the Texarkana Court of Civil Appeals, recognized the rule as contended for by appellant, but said it had no application to fraudulent settlements for personal injuries. On this issue Judge Hodges said:

"We do not think the efforts to evade the effects of a settlement impeached upon the ground of fraud should be regarded entirely in the same light as action to set aside a contract by which property rights have been exchanged, upon the ground that the trade was brought about by fraud of one of the parties. There the party against whom the action is brought has parted with something to the complainant which the latter is not entitled to retain unless the contract stands as made. In actions of the kind here under consideration it is quite different. If the allegations of the complaining party are true, he has sustained a damage for which he has been only partially compensated, and has been induced to relinquish a right or claim to further compensation through the fraud of the other party. It is not strictly a proceeding to rescind a contract where equity would require of the complaining party that he place the other in statu quo, before he will be allowed to obtain relief from the terms of his contract, but an effort to obtain full and adequate compensation, notwithstanding the previous acknowledgment of entire satisfaction, by showing that such an acknowledgment was fraudulently procured. There is no good reason why the appellants should be entitled to the return of the partial payment for the liability before an injured party can maintain an action for the remainder. What principle of equity would demand the return of the part paid? Is the company any the worse off if the jury or the court should determine that it had paid only a part of what it should have paid in the first instance? Certainly not, if the total liability is credited with the sum previously paid. There was no error in overruling the special exception."

Missouri Pacific Ry. Co. v. Brazzil, 72 Tex. 233, 10 S. W. 403, 404, by the Supreme Court, specially relied upon by appellant, was not a fraud case but relief was sought on the ground of "the plaintiff's want of sufficient mental capacity to contract at the time the release was executed," and was decided upon principles of law that have no relation to the facts of this case.

■■ The issue of ratification was submitted to the jury by question No. 10, and found in appellee's favor, as shown above. Appellant's exceptions to this issue, not disposed of by what has already been said, were that "it was a general charge, a charge submitting questions of law, involving numerous issues of fact, and a conclusion of law resulting from the combination of facts." Chapman v. Guaranty State Bank (Tex. Civ. App.) 297 S. W. 545, 552, sustains the contention that the issue of ratification is "a mixed question of law and fact," but not that the submission of the issue of ratification as a specific issue, as it was submitted in this case by question No. 10, constituted reversible error. In the Chapman Case, though "ratification" was submitted in language almost identical with its submission in this case, yet the form of the issue was not condemned. The court merely held that "the jury should not have been left to determine that issue without some instruction from the court as to what acts would constitute a valid and binding ratification." So, in this case, as appellant did not request the submission of any specific fact issue nor except to the charge on that ground, it was not reversible error to submit the issue of ratification in the language of issue No. 10. Further, these exceptions were too general to call the court's attention to any specific issue of fact. Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920.

■ We have no proposition before us, as was urged in the Chapman Case, supra, that the court erred in failing to submit to the jury, in connection with issue No. 10, an instruction as "to what acts would constitute a valid and binding ratification," except as such a proposition may be deduced from the following exception and special charge requested by appellant.

"Only in the event the Court overrules defendant's exceptions to Special Issue No. 10 and submits the issue of ratification in the form and manner there stated, defendant excepts further to that issue submitted alone as it is and requests the Court to give the following instructions to the jury in connection therewith:

"Gentlemen of the Jury:

"You are instructed that if you find that plaintiff did not know his physical condition and if you find that he believed the promises, if any were made, of W. Hilton Berger at the time of the execution of said compromise settlement agreement, and you also find that after plaintiff knew his physical condition and after he believes the promises, if any were made, of W. Hilton Berger, he retained a large part of the consideration paid to him, knowing whence it came and the purpose for which it was paid him, and steadfastly refused to tender or offer any part of the same back to defendant, then you will find that plaintiff has ratified this compromise settlement agreement."

This charge was correctly refused, first, because it was a general charge. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Kemper v. Police & Firemen's Ins. Ass'n (Tex. Com. App.) 48 S.W.(2d) 254. Then, it

did not embody a correct legal proposition because the facts, as summarized, did not, as a matter of law, constitute ratification; and it wholly ignored the issue of intent.

■ In addition to establishing the issue of fraud, appellant correctly asserts that appellee rested under the burden of showing "injury" before he could rescind the contract of settlement; that is, having received $2,-000 through the settlement, he was required to show, but for the settlement, that he would have received more than that sum under the statutory schedules of compensation. 26 C. J. 1167–1169; Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1. The jury's findings on issues Nos. 1 and 2 that appellee's injuries resulted in "a total incapacity" and in "a permanent incapacity" and the fact that his statutory compensation was $20 per month met the full burden of this proposition; that is, the undisputed facts, aided by the jury's verdict, showed that, but for the settlement, appellee would have received more than three times as much, under the statutory schedules of compensation, as was paid him in the settlement.

In view of question No. 2, there is no merit in the proposition that the court refused to submit the issue of permanent incapacity, nor was error committed in refusing to submit appellant's questions on the issue of permanent incapacity.

■■ We sustain the proposition that the evidence raised the issue of partial incapacity, which appellant called to the court's attention both by exceptions to the charge and by a requested issue. On authority of Indemnity Insurance Co. v. Boland (Tex. Civ. App.) 31 S.W.(2d) 518, the refusal of the court to submit this issue constituted reversible error. Appellee cannot justify this omission from the court's charge by its argument that "appellee did not plead partial incapacity." This defense was available under the general denial. Indemnity Ins. Co. v. Boland, supra. Appellee would also sustain the ruling of the court, refusing to submit this issue, on the ground that he established "total permanent incapacity" as a matter of law. This is not a correct construction of the testimony. The report from appellee's physician, upon which he based his settlement, was that he would reach his maximum recovery within ten or twelve months from the date of the injury, during which time he would be totally disabled, and he would have "a 10% partial permanent disability." The expert testimony offered by both parties raised the issue of partial disability.

■ It was also reversible error for the court, over appellant's objections, to refuse

to define the term "injury," as used in special issue No. 1. Zurich Gen. Accident & Liability Ins. Co. v. Wood (Tex. Civ. App.) 27 S.W.(2d) 838, 839. See, also, France v. Graves (Tex. Civ. App.) 48 S.W.(2d) 438, and authorities therein cited. Appellee says that, "had this case been an action under the compensation law to recover compensation," the rule announced in Zurich Gen. Accident & Liability Ins. Co. v. Wood, supra, would apply, but he insists that this is not a compensation case. It is a compensation case to the extent that appellee rested under the burden of showing that he received less money through the compromise settlement than he would have received under the statutory schedules of compensation. This issue could be determined only under the principles of law governing "injuries" received by employees within the provisions of the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.). For this issue to be determined correctly, under the authority of the case cited, it was necessary for the court to define the term "injury," as used in special issue No. 1.

Upon another trial appellee should identify with more certainty the X-ray pictures upon which his experts based their testimony. We think appellant's objections to this testimony were well taken, but do not review the facts upon which these exceptions were based, because it is apparent from the record that appellee can meet the objections upon another trial.

■ As it was not shown that the general manager of the Gulf Refining Company, appellee's employer, was the agent of appellant, or had any authority to represent it in any way in the compromise settlement, all allegations of promises or agreements made by the general manager of the Gulf Refining Company should be stricken from appellee's petition.

■ There was no issue in the case making material appellee's testimony that he was a married man with one child. Evidence on this point should be excluded on another trial, if again objected to. First National Bank of Amarillo v. Rush (Tex. Civ. App.) 227 S. W. 378; C. A. Bryant Co. v. School District (Tex. Civ. App.) 18 S.W.(2d) 750; Roberts v. Nowlin (Tex. Civ. App.) 9 S.W.(2d) 69; Edwards v. Smith (Mo. App.) 286 S. W. 428.

As the judgment of the lower court must be reversed, we pretermit a discussion of the assignments complaining of the argument of counsel for appellee.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded.