Forrest Jerry **MILLER, Appellant,**

v.

Eleanor W. **HARRISON, Appellee.**

No. 15495.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Oct. 23, 1969.

Brown, Kronzer, Abraham, Watkins & Steely, John B. Murphrey, Nick C. Nichols, W. James Kronzer, Houston, of counsel, for appellant.

Bryan, Patton & Westmoreland, Chilton Bryan, J. H. Westmoreland, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover damages sustained in a collision between an automobile and a motorcycle. The trial court entered a judgment for the defendant based on a jury verdict.

The jury failed to find any act of negligence on the part of the defendant, or any act of contributory negligence on the part of the plaintiff. It failed to make affirmative findings on issues presenting the theories of sudden emergency, unavoidable accident, and last clear chance. The damages assessed were minimal.

Appellant insists that the negative finding to Special Issue No. 3, inquiring whether appellee's automobile was within the intersection, or so close thereto as to constitute an immediate hazard, at the time appellee undertook to make a left turn, was so contrary to the great weight and preponderance of the evidence as to be clearly wrong. In connection with this issue the jury was instructed that an approaching vehicle is an "immediate hazard" when it is so close that a person using ordinary care would reasonably conclude

that he or she could not complete his or her turn through the intersection *without* danger of collision.

This is not a common law negligence issue. It requires the jury to determine where the vehicles were at the time appellee undertook to make a left turn and whether a reasonable person using ordinary care would conclude from the location of the vehicles with reference to the intersection that the turn through the intersection could be completed without danger of collision. The fact of the collision is one of the circumstances to be considered in determining the presence of danger. In the absence of some circumstances from which it reasonably could be concluded that the cause of the collision was something other than the close proximity of the vehicles at the time the turn was undertaken, the fact of the collision would be conclusive of the presence of a danger of collision at that time. The fact that the approaching vehicle might be able to take evasive action sufficient to avoid an impending collision would have no probative force on the question of the presence of danger. The question is whether the approaching vehicle was so *close* to the turning vehicle that a person using ordinary care would reasonably conclude that there was *danger* of a collision before the turn *through* the intersection would be *completed*. The answer to this question requires consideration of the speed of both vehicles as well as their proximity to each other.

All of the evidence relevant to this issue must be reviewed with reference to these points. The defendant, Mrs. Harrison, testified on deposition that she was traveling north on Homestead Road in her automobile. A passenger, Miss Burns, was occupying the lefthand side of the rear seat. Mrs. Harrison intended to turn left onto Van Zandt Street to pick up another passenger. As she neared the intersection she saw a motorcycle approaching at a distance of about three hundred feet. She was close to the intersection before she

started making her turn. She cut the corner sharp and reached the lefthand side of the Van Zandt corner when the collision occurred. At one point she testified that she was in the process of turning when she first saw the motorcycle. She said: "Well, I saw it and—when I—he begin to come off the side of the road, I thought he was turning down Van Zandt." She also said that he was "at a distance that I had plenty of time to turn, in my estimation, if he had not picked up speed." She did not know how fast he was going and could not estimate his speed. She was in her proper lane of traffic when she first saw the motorcycle.

Mrs. Harrison testified: "When I saw him getting off the pavement I completed my turn. I cut the corner short, because I presumed that he was going down Van Zandt." She never did have any estimate or idea of the speed of the motorcycle. She did not pick up speed to turn and she had already made the turn before she applied her brakes. Since she was going no faster than five or ten miles an hour, she stopped immediately. Before she started her turn she was traveling about thirty miles per hour. She applied her brakes before beginning her turn and removed her foot from the accelerator. At the time she stopped she realized that the motorcycle was not turning onto Van Zandt Street, but was attempting to pass in front of her car. At that time he had crossed from the shoulder of Homestead Road onto the paved portion of Van Zandt Street. At the time she first applied her brakes, the motorcycle was close to her car, but she couldn't estimate the distance in feet.

The deposition testimony of Mrs. Harrison was introduced into evidence by the plaintiff, but she also testified in person at the trial.

She then testified that when she first saw the motorcycle it was at some distance down the street near the filling station, but she could not estimate the distance in yards or feet. When she "got to the intersection ready to make my turn the

motorcycle had gone off the shoulder of Homestead Road as if it was going down Van Zandt." "He had gone off the shoulder of Homestead Road before the intersection onto some rocks as if he—I saw no signal from him with a hand—*as if he were turning* down Van Zandt." "I was in the process of making the turn when he went off the side of the road here." "I saw him go off the side of the road here * * I thought he was going this way so I cut the corner short. I had cleared Homestead Road at that time—I was on this side because of the fact that—I observed him going on the other side * * *" "* * * When I saw that he wasn't going down Van Zandt I applied my brakes." "When I was in the process of turning, I looked and he was off the road at that time, not at the intersection." She again testified: "Yes, and he picked up speed to make it, to try to make it around."

The testimony of Mrs. Harrison has been detailed at some length because it is the testimony most favorable to the answer made by the jury to the question under consideration. This testimony was corroborated to some extent by that of Miss Burns. She testified that Mrs. Harrison was driving about thirty miles an hour while on Homestead Road; that she noticed the motorcycle as they were approaching the intersection and that it was then about the middle of the block or farther down; that Mrs. Harrison entered the intersection first; that the motorcycle was then north of the intersection, but she did not know how many feet north. She testified that when Mrs. Harrison went into the intersection the plaintiff "had pulled off the road and was turning into Van Zandt." "He came into Van Zandt on the north side of the intersection at Van Zandt not before the intersection. He would sort of have cut—it is a curved thing, I was told, a curved intersection— and he had cut in right in there. It was on the righthand side of Van Zandt." Mrs. Harrison was going less than thirty miles per hour when she started the turn, possibly fifteen or twenty. At the point of impact she was going about three miles per hour.

Miss Burns testified: "As he approached the corner as he turned he seemed to accelerate a bit and as he came seemingly to turn and go down Van Zandt to the west he then turned in front of the car, then apparently trying to get around us."

Billy D. Rice testified that he knew none of the parties involved in the collision. He was in his automobile following the car driven by Mrs. Harrison at a distance of about two car lengths. She started to turn into Van Zandt before she got to the intersection. At that time the motorcycle was "about" in the intersection. She was going thirty or thirty-five miles per hour, but she might have slowed down "just a little bit" before she got to the intersection. He saw no change in her speed after she started her turn until she hit her brakes just before the collision. When he first saw the motorcycle it was on the pavement about in the middle of the lane going thirty or thirty-five miles per hour. After Mrs. Harrison began to turn, the motorcycle veered to the right and its speed decreased. At impact it was going about ten miles per hour or between five and ten miles per hour. When the motorcycle turned to the right, it was about in the middle of the intersection. The car was almost completely off of Homestead Road at the time of the impact. It was going about fifteen miles per hour at that point.

The plaintiff, Mr. Miller, testified that prior to reaching the intersection he was going between thirty and thirty-five miles per hour. As he reached the intersection he saw the defendant's car cross the center line. He blew his horn, pulled to the right, and applied his brakes. When the car crossed the center line, it was 45 or 50 feet south of the intersection. He reached the intersection before the car did. He did not increase his speed after the car reached the intersection. He testified that when he was estimating the distances that the car and motorcycle were from the intersection when the defendant crossed the center

line, he was referring to the point where the curved corners beaten out by traffic would reach the pavement about twenty-five feet from the points of intersection of the paved portions of the streets. He said that when Mrs. Harrison crossed the center line she was going 40 to 45 miles per hour, and that at the time of impact she was going 20 to 25 miles per hour.

■ Mrs. Harrison testified to the effect that when she started to make her turn the motorcycle had gone off the paved portion of Homestead Road "as if he were turning down Van Zandt Street," and that she cut the corner short because she thought he was turning into Van Zandt, and that she was on the righthand side of Van Zandt because "she observed him going on the other side." Miss Burns testified that when Mrs. Harrison went into the intersection "the plaintiff had pulled off the road and was turning into Van Zandt." We can only conclude from this testimony that at the time appellee began her turn, appellant was very near the intersection and that, considering the speed of the vehicles, a collision was imminent unless appellant turned into Van Zandt Street or took other evasive action. We are not concerned with the question of whether appellee was negligent in making the left turn under the conditions present, or whether appellant was negligent in failing to take evasive action. The great weight and preponderance of the evidence establishes that at the time appellee undertook to make the left turn, the appellant was so close to the intersection as to constitute an immediate hazard.

Appellant has also urged that the trial court erred in permitting appellee to prove, over objection, that she was a divorcee with five children, had been a school teacher for a number of years, and was working in the "Head Start" program.

In 29 Amer.Jur.2d, Evidence, § 437, the text reads:

"The facts pertaining to the family circumstances and relationships of a party to an action, such as the facts that he is married or single and that a number of persons are dependent upon him for support, and matters relative to his social standing, rank, or condition in life are generally inadmissible in evidence upon the trial, unless such facts have some legitimate bearing upon the issues involved, as in actions for defamation, or actions for damages for wrongful death. This rule has found particular application in actions for personal injuries not resulting in death, it being generally held that evidence of the plaintiff's domestic relations is inadmissible, primarily because such evidence is calculated to appeal to the sympathy of the jury, although such evidence is admissible in cases where exemplary or punitive damages may be allowed."

■ This rule is generally followed in Texas. Consolidated Cas. Ins. Co. v. Ray, 267 S.W.2d 880 (Tex.Civ.App.-San Antonio 1954, ref., n. r. e.); Indemnity Ins. Co. of N. A. v. Sterling, 51 S.W.2d 788 (Tex. Civ.App.-Beaumont 1932, writ dism.); Anno. 59 A.L.R.2d 371, 404. Appellant, however, did not make a timely objection to the questions, and thereby waived the objection. McCormick and Ray, Texas Law of Evidence, 2d Ed., Vol. 1, §§ 23 and 27.

The other points of error relied on by appellant relate to improper argument and jury misconduct. Since it is not probable that these matters will arise on a new trial, the opinion will not be lengthened by discussing them.

Reversed and remanded.