VOSBURG CO. v. WATTS et al.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1915.)

No. 1282.

1. Logs and Logging ⬯3—Conveyance of Growing Timber—Right to Cut and Remove—Injury to Trees Reserved.
   A conveyance of the timber on certain land above a specified size, with the right to cut, manufacture, and remove the same, and to use the land as may be proper and requisite for that purpose, does not give the grantee the right to destroy or injure the smaller timber reserved, except to the

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

extent that is requisite in cutting and removing that conveyed; but he has the right to use modern and economical appliances, although they were not in use when the conveyance was made, where, owing to the nature of the soil or other conditions, it is reasonably necessary to secure the timber purchased.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ☞3.]

2. COURTS ☞352—PROCEDURE—EQUITY RULES—SUBMITTING QUESTIONS TO JURY.

New equity rule 23 (198 Fed. xxiv), which provides that if, in a suit in equity, a matter ordinarily determinable at law arises, it shall be determined according to the principles applicable, "without sending the case or question to the law side of the court," does not deprive the court of the discretionary right to refer to a jury a question of fact which is incidental and subordinate to the main contention.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. ☞352.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Suit in equity by R. C. Watts and others against the Vosburg Company. Decree for complainants, and defendant appeals. Modified and affirmed.

Wm. H. Lyles, of Columbia, S. C. (Lyles & Lyles, of Columbia, S. C., on the brief), for appellant.

W. P. Pollock and C. L. Prince, both of Cheraw, S. C. (Stevenson & Prince, of Cheraw, S. C., on the brief), for appellees.

Before PRITCHARD and KNAPP, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. The appellees in this case (plaintiffs below) are the owners of the tract of land described in the complaint. By deed dated February 29, 1904, they conveyed all the timber thereon, "which will measure at the base, when cut, 12 inches or over in diameter," to J. R. Paschall and others. The time allowed the grantees in which to cut and manufacture the timber sold was ten years; but provision was made for an additional period of five years, if desired, for a stated consideration. Paschall and his associates subsequently conveyed to the N. L. Hoover Lumber Company, which gave a mortgage on the timber to a trust company and defaulted. The mortgaged property was sold in foreclosure proceedings, under a decree dated January 12, 1911, to one Du Boise, who later conveyed the same to the appellant. The deed of February 29, 1904, gave to the grantees the right "to enter upon said lands and erect thereon sheds, shanties, and other erections, place machinery thereon, make such dirt roads or tramroads as may be needed to use same in going upon, over, or through said lands, and generally to use said lands as may be *proper and requisite* for the cutting and manufacturing of the timber herein conveyed"; and it appears that appellant, when it began to cut and remove the timber, used for that purpose two steam skidders—one

an overhead machine, and the other described as a "snaking" machine. The use of these skidders resulted, as was claimed, in the destruction of a large portion of the reserved young timber—that is, timber less than 12 inches in diameter—and this suit was brought, in February, 1913, to enjoin the operation of skidders "in such manner as to destroy the timber of plaintiffs," and for an accounting of the damages already occasioned by the use of these machines.

The trial court gave judgment for the plaintiffs, and granted an injunction against the defendants, "enjoining and restraining them from the operation of the skidder, or the use of any methods for cutting and removing of the timber that will unnecessarily destroy and injure the timber reserved to the grantors in the deed of conveyance; such injunction, however, not to operate to prevent the use of the skidder in the localities designated as sloughs, where the nature of the soil forbids the use of the older methods of cutting and removing it, or in localities where the timber is of such a character that there is substantially no timber the size reserved which can be materially injured by the skidder: Provided, that nothing herein shall be construed to permit the use of the skidder from such points as that the transit of the timber cut from the point in which it is permitted to be used for the purpose of removing under this order to the point of loading for transportation shall unnecessarily injure or destroy any of the timber reserved by the deed herein." The defendant thereupon brought the case to this court upon an assignment of errors which present the questions to be determined.

On the trial defendant offered in evidence the record and decree in the foreclosure suit above mentioned, which was set up in its answer, and error is alleged because this evidence was excluded. It appears, as we understand from the record in this case, that in addition to the timber rights conveyed by the deed of February, 1904, the Hoover Lumber Company leased from R. C. Watts two other tracts upon which the buildings were to be placed, and which included the right to construct a tramroad across certain lands for the purpose of hauling timber from other lands upon which that company had acquired the timber. Because of failure to pay the rent due him under these leases, Watts brought suit in the state court to declare the leases forfeited and for a delivery of the premises to him, and judgments were entered accordingly. The trustee of the mortgage thereupon instituted the foreclosure suit, and asked that Watts be restrained from asserting his forfeiture. Watts was made defendant in that suit as the holder of the judgments obtained by him, and because of certain allegations in the bill charging him with interfering with the company whose property was sought to be foreclosed. By an order made on the 11th of January, 1911, all statements derogatory to or reflecting upon Watts were withdrawn and the judgments held by him ordered to be paid; and we agree with the trial court that the effect of this order was practically to dismiss Watts from any further connection with the foreclosure suit.

Without reciting the facts here referred to in greater detail, it is sufficient to say that we perceive no ground upon which the record in the foreclosure suit was admissible in this case. That suit was brought

to foreclose the mortgage and sell the property because the mortgagor had failed to make the payments which the mortgage secured, and neither the rights of the mortgagor in respect of cutting timber, which were presumably the same and obviously could not be greater than the rights of the original grantees, nor the liability of the grantees or their successors for wastage, were involved in that case. The decree of foreclosure was upon no ground then in issue against Watts, for the allegations in the bill, as to his interference and other like matters, had been withdrawn, and provision was made in the decree for the payment of his judgments. The fact that he was made a defendant as a judgment creditor subsequent to the mortgage put no obligation upon him to assert in that case, even if he then believed or claimed it to be the fact, that the reserved rights of the grantors in the deed of 1904 in the unsold young timber were being destroyed or impaired by wasteful methods of cutting. Indeed, as we see the matter, Watts had no standing to litigate in the foreclosure suit, even if he had desired to do so, the questions at issue in this case. Moreover, this suit is against the assignee of the purchaser at the foreclosure sale in 1911, and its operations did not begin until some time thereafter. The decree of foreclosure conferred no rights which were not granted in the original conveyance, but merely stated and confirmed them. It was in no sense an adjudication of any issue raised in this case, and had no effect whatever upon the reserved rights of Watts and the other plaintiffs under the deed of 1904. We are therefore of opinion that this evidence was properly excluded.

So far as the other errors assigned are based upon findings of fact to the effect that the use of skidders in removing timber is as a general rule more injurious to small timber reserved than its removal by other and older methods of operation, and that in this case damage was done by defendant not necessarily incident to the removal of the timber sold, in that timber under the size permitted to be cut had been damaged and destroyed to an extent not required for the proper removal of the timber conveyed, we are of opinion that no ground of reversal has been made to appear. The case was tried by an experienced judge, who is thoroughly familiar with timber leases and lumber operations of this character, and we are satisfied, after careful examination of the testimony, that his findings reflect the substantial truth concerning the operations in question. Certainly there is no such preponderance of proof in favor of the defendant as to warrant us in reaching a different conclusion. Without reviewing the voluminous testimony upon this point, which exhibits the usual phases of disagreement and contradiction, we hold the fact to be established that the use of steam skidders in getting the cut timber to the tramway, as they were ordinarily used by defendant, would in the nature of the case be more injurious and destructive to the young trees reserved than the use of carts and other vehicles for the same purpose, and that the methods pursued by defendant and the skidders used in its operations have injured to a quite unnecessary extent, on some portions of the tract at least, the undersized trees belonging to the plaintiffs.

[1] In construing the language of the deed for the purpose of determining the rights of the parties, the learned trial judge held that its effect was to give "the grantee an estate in fee simple in the timber sold, qualified by the obligation to remove it within the time specified, together with an easement granting it the right to use the lands as may be proper and requisite for the cutting and manufacturing of the timber therein conveyed." It was accordingly found as a conclusion of law:

"That this deed is to be construed so as to harmonize the estate reserved in timber less than 12 inches at the base to the grantor with the estate conveyed, so as if possible the grantee shall obtain full benefit of the property sold to and paid for by him, but subject to the duties that the estate reserved by the grantor shall not be injured or impaired in any way further than may be requisite for the enjoyment by the grantee of the estate in the property sold."

And it was said to follow as a further conclusion of law:

"That under the language of this deed the grantee had no right, in cutting, removing, or manufacturing the timber conveyed, to injure the condition or value of the timber reserved, except to the extent that might be requisite for the cutting and removal of the timber conveyed."

We are of opinion that this construction of the deed is substantially correct. It gives to the language used a practical interpretation, which seems to us to express what was probably in contemplation by the parties when the conveyance was made. The grantee is secured the reasonable enjoyment of the timber rights acquired, and the grantors are reasonably protected from needless injury to the property reserved. The use of skidders is prohibited where they will unnecessarily destroy and injure the unsold timber, and permitted in places where other means could not be employed except at prohibitive cost. It appears that skidders had not been much used in this section of the country, or were only beginning to come into use, when the deed of 1904 was executed; and it is therefore not unlikely that the grantors supposed the removal of the timber sold would injure the reserved timber only to such extent as ordinarily resulted from cutting and removal by the means then usually employed, and the grant may have been made with that expectation. But, even if this be assumed, it would not follow that the grantee should now be prevented from using modern and much more economical appliances to the extent that such use will not unreasonably impair the reserved rights of the grantors under their conveyance. The grantee should be allowed to use skidders and other suitable devices when they can be employed to advantage, provided their use does not result in substantial injury to the unsold trees which would otherwise be avoided. The grantee may not inflict general and widespread destruction upon the undersized trees by the use of steam skidders or other machines, and the grantors may not prohibit the use of economical methods and appliances which can be employed without unreasonable disregard of their property rights.

It is the evident aim and intent of the decree under review to give to the terms of this timber grant a reasonable and practical construction, and we see no reason for doubting that it will work out a close ap-

proximation to justice between the contending parties. While the general injunction contained in the decree, enjoining the operation of skidders or other methods of cutting and removing the timber "that will unnecessarily destroy and injure the timber reserved to the grantors," is not open to criticism, we are of opinion that the limitations or exceptions contained in the proviso should be somewhat modified, at least to such extent as will remove an apparent or possible ambiguity. It is deducible from the testimony, and indicated in the findings of the trial court, that there are, roughly speaking, three kinds of conditions or localities on this timber tract where the use of skidders should be permitted. The decree set forth in the record allows the use of skidders "in the localities designated as sloughs, where the nature of the soil forbids the use of the older methods of cutting and removing, or in localities where the timber is of such a character that there is substantially no timber the size reserved that can be materially injured by the skidder." If the phrase, "where the nature of the soil forbids the use of the older methods of cutting and removing," is intended to be a definition of sloughs, as might be claimed, and as was apparently inferred by appellant, since one of the errors assigned is directed to this point, it would follow that there are only two kinds of places in which the decree permits skidders to be used, namely, sloughs and localities where there is little or no small timber. We do not assume that this was so intended, and counsel for appellees were understood on the argument to virtually disclaim such a construction. It was said, however, that the word "sloughs" describes a definite and well-known condition, and that timber could not be removed from a place of that description by the use of the older methods of cutting and removing, except at an expense which would be wholly prohibitive. But there may be and apparently are other places which are not sloughs, or properly so designated, where because of the nature of the soil or other peculiar and extraordinary conditions the timber could not be removed without the use of skidders or other mechanical appliances, and it seems plain to us that the reasonable use of skidders should be permitted in such places.

In order, therefore, that this matter may be freed from uncertainty, the injunction should be so modified as to permit the use of skidders (1) in sloughs; (2) in localities where the nature of the soil or other peculiar and extraordinary conditions forbid the use of the older methods of cutting and removing; and (3) in localities where the timber is of such character that there is substantially no timber the size reserved that can be materially injured by the skidder. It is already provided in the decree that the defendant may apply to the court and produce testimony and maps for the purpose of having defined and marked the localities in which the use of skidders is enjoined and those in which it is permitted, and this will enable the court to give precise and concrete application of the terms and intent of the decree, if the parties do not agree among themselves. The difficulties of the case, as we apprehend, do not arise from the legal principles involved, but rather and mainly in their practical application; and it is believed that a sincere effort on both sides to conform to and put

into effect the decision herein made, which substantially affirms the ruling of the court below, as that ruling is understood, will make it comparatively easy to avoid further litigation.

[2] The court below found that the testimony was too vague and indefinite to permit a decision as to how much of the unnecessary damage had been done by the defendant and how much by its predecessors, and accordingly directed that the following issues be submitted to a jury:

"What is the amount of the damage in money which has been inflicted upon the complainant as owners of the land described in the deed by the unnecessary injury or destruction of the growing timber thereon measuring at the time of its injury or destruction less than 12 inches in diameter at the base, by the present defendant in the course of its operations in cutting and removing the timber from said land."

An assignment of error is based upon this direction, because it is alleged to be in violation of rule 23 of the rules of practice for courts of equity of the United States, and because it fixes the time for ascertaining the size of the timber injured as the time of its injury or destruction. The equity rule in question reads as follows:

"If in a suit in equity a matter ordinarily determinable at law arises, such matter shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court."

We are unable to find a violation of this rule, the purpose of which is obvious, in ordering a particular question of fact in this cause to be submitted to a jury. The case has not been sent to the law side of the court, and we are confident that the rule was not intended to deprive a court of equity of the discretionary right to have its "conscience enlightened," as the phrase has it, or its work facilitated by referring to a jury some question of fact which is incidental and subordinate to the main contention. The principal relief sought by plaintiffs in this suit is an injunction against the invasion of their rights in the future; the question upon which the judgment of the jury is desired is a minor and relatively unimportant issue.

So far as the question submitted to the jury includes or prescribes a measure of damages, or may be so regarded, we are not prepared to hold that it is erroneous, in view of the facts disclosed by the testimony already taken. Granting that the defendant will have the right later on to cut trees which at present are less than 12 inches in diameter, and which may grow to that size before the period limited for removal expires, nevertheless it is likely to happen in respect of many, if not most, of such trees that either they will not be large enough to cut within the time limited, or that the defendant will not exercise its right to cut them. However it may turn out as to trees that are now under 12 inches, we are of opinion that the plaintiffs have an existing property right in such trees which they are entitled to have protected. In our judgment the assignment of error here considered is without substantial merit.

It follows that the decree appealed from is right, except to the extent that it may need to be modified in accordance with the views hereinbefore expressed, and, as thus modified, it will be affirmed.