ROGERS et al. v. MARION COUNTY LUMBER CORPORATION.

(Circuit Court of Appeals, Fourth Circuit. April 2, 1918.)

No. 1581.

1. APPEAL AND ERROR ⬥878(1)—NECESSITY OF APPEAL.

Where defendant did not appeal from the portion of the decree which was adverse to it, that matter will not be reviewed on plaintiff's appeal.

2. BOUNDARIES ⬥37(3)—DEEDS—CONSTRUCTION.

In a suit to enjoin the cutting of timber on a certain lot, which defendant claimed had been conveyed in plaintiff's timber deed, evidence *held* to show that the eastern line of tract, when properly located, included the lot.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. LOGS AND LOGGING ⟨⟩3(7)—TIMBER DEEDS—CONSTRUCTION.

  Where a grant provided that timber was to be cut and removed in the ordinary way, the grantee was entitled to use skidders and other devices, so long as their use did not result in substantial injury to the unsold trees, etc.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit by E. K. Rogers and others, against the Marion County Lumber Corporation. From a decree which denied most of the relief sought, plaintiffs appeal. Affirmed.

T. I. Rogers and W. M. Stevenson, both of Bennettsville, S. C., for appellants.

Henry E. Davis, of Florence, S. C. (Willcox & Willcox, of Florence, S. C., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The above-named appellants, plaintiffs below, are the owners of a tract of land in Marlboro county, South Carolina, subject to a grant, executed in 1899 and afterwards acquired by defendant, of the right to cut and remove "all the short straw pine timber measuring 14 inches at the stump." In this grant the tract is thus described:

"All the land on the west side of a line beginning at the residence of George Harper and following the old pasture fence by the H. J. Rogers residence, and continuing on to the Levi Gibson line, being bounded by the lands of estate of R. G. W. Hodges on the north, on the east by the estate lands of H. J. Rogers and George Harper, on the south by lands of J. E. Napier and Emanuel lands, and on the west by lands of Mrs. Minnie S. Rogers, and Whittington lands; this being part of the estate lands of H. J. Rogers, deceased."

[1] The suit was brought to enjoin the cutting of any timber on a certain lot, known as the "Old Bay Field," on the ground that it is not included in the grant, to enjoin the construction of branch lines or spurs to the railroad authorized to be built on the tract, and to enjoin the use of "skidders" in carrying on the timber operations; and these were the three questions litigated at the trial. The decision rendered is to the effect that the grant includes the lot in dispute, that branch lines or spurs cannot be constructed under the permission to build "a railroad," and that skidders may be used to a limited extent under prescribed conditions. As defendant has not appealed, the second question is out of the case; the other two questions are here on plaintiffs' appeal.

[2] The principal controversy is whether the grant embraces the "Old Bay Field," so called, and this depends on the correct location of the east line of the described tract. In the grant this line is defined as:

"Beginning at the residence of George Harper and following the old pasture fence by the H. J. Rogers residence, and continuing on to the Levi Gibson line."

As the Rogers residence is north of George Harper's, and the Gibson line still further north, the course apparently intended runs north from the starting point; and there was testimony that such a course would follow more or less of the way an old fence, or where at one time there had been a fence. It is enough to say that this north and south boundary, which takes in the disputed lot, answers the calls and harmonizes all the descriptive clauses of the timber deed. Moreover, it seems plainly the line that would be run by a practical surveyor in locating the land according to the language of the instrument.

The plaintiffs insist, however, and this appears to be the basis of their contention, that "the old pasture fence" referred to in the grant is a well-known fence on the westerly side of "Old Bay Field," and that consequently the lot in question is excluded. But the adoption of that fence as the eastern boundary of the tract involves many and serious difficulties. Its location is nowhere nearer than some 2,500 feet to the "residence of George Harper," which is the starting point named in the deed; and it would seem absurd to describe the place of beginning as "at" the residence of Harper, when it was in fact somewhere in an old fence half a mile away. If the designated starting point be taken, namely, at approximately the Harper residence, it would be necessary, in order to locate the boundary line as claimed by plaintiffs, to run south, instead of north, and thence westerly to "the old pasture fence," which would not at all answer the calls of the deed. Besides, a boundary so located would leave to the southeast a considerable area which is concededly covered by the grant; whereas, the entire tract conveyed is stated to be "on the west side of a line" which according to its description runs practically north and south through the place of beginning. In short, we are convinced that the learned District Judge, whose exhaustive review of the evidence leaves little to be said, was clearly right in holding that the grant in question includes the "Old Bay Field."

[3] The objection to the use of skidders needs but a word of comment, since upon that issue we are of opinion that the case is controlled by our decision in Vosburg v. Watts, 221 Fed. 402, 137 C. C. A. 272. True, in this case the grant provides that the timber is to be cut and removed "in the ordinary way," but that was plainly implied in the Vosburg grant, because it appeared that neither of the parties thereto contemplated the use of skidders when the grant was executed. And so we said:

"But, even if this be assumed, it would not follow that the grantee should now be prevented from using modern and much more economical appliances to the extent that such use will not unreasonably impair the reserved rights of the grantors under their conveyance. The grantee should be allowed to use skidders and other suitable devices when they can be employed to advantage, provided their use does not result in substantial injury to the unsold trees which would otherwise be avoided. The grantee may not inflict general and widespread destruction upon the undersized trees by the use of steam skidders or other machines, and the grantors may not prohibit the use of economical methods and appliances which can be employed without unreasonable disregard of their property rights."

The equitable rule thus stated applies to the facts of the instant case, and the contention of plaintiffs in this regard cannot be sustained.

The decree appealed from will be affirmed.