**ASSOCIATED EMPLOYERS LLOYDS et al. v. AIKEN.**

**No. 13766.**

Court of Civil Appeals of Texas. Dallas.

April 11, 1947.

Rehearing Denied May 9, 1947.

Lucian Touchstone, of Dallas, for appellants.

Webb, Elliot & Rogers, of Sherman, for appellee.

YOUNG, Justice.

The suit was to set aside a compromise settlement agreement theretofore had between plaintiff Mrs. Aiken and defendant, releasing a claim for injury to eyes received in course of employment. Basis of action' was fraudulent representations allegedly made by the doctor and claim agent for insurer; defendant pleading insufficiency of allegations to state a cause of action, general denial, and that the release showing $120 consideration was in all respects valid and binding. Aforesaid agreement had been approved by the Industrial Accident Board. At close of plaintiff's testimony in chief, defendant's motion for peremptory instruction was overruled; the case then going to the jury who returned a verdict favorable to plaintiff. Motion of defendant for judgment non obstante was later overruled and judgment rendered setting aside the compromise settlement and authorizing a filing of claim before the Board, with result of this appeal.

The jury issues and answers were, in effect: (1) The injury (to eyes) was received by plaintiff in course of employment, about June 28 and 29, 1945; (2) and was a serious one; (3) prior to the time she

signed the compromise settlement agreement, Dr. I. C. Bates advised plaintiff that her eyes were all right; (4) on which occasion Bates was the doctor for defendant; (5) said advice given to plaintiff by Dr. Bates was false; (6) plaintiff signed the settlement agreement believing what had been told her by Dr. Bates; (7) and would not have executed papers of settlement, had not such representations been made to her; (8) defendant's claim agent Gilmore knew 'that above-mentioned advice concerning her eyes had been given to plaintiff by Dr. Bates; (9) before signing the settlement agreement, plaintiff had been advised by defendant's claim agent that Dr. Bates had said her eyes were all right; (10) at the time Gilmore made such representation he was acting as agent for defendant; (11) at the time plaintiff signed the settlement agreement she believed in such advice by defendant's claim agent; (12) and would not have executed the agreement had such representations not been made; (13) said claim agent knew plaintiff would not have executed the settlement papers except for the representations so made by him; (14) Dr. Bates and Mr. Gilmore, in making the representations referred to in proceeding issues, were acting together to procure a compromise settlement.

Error of the trial court is assigned in the following points of appeal: (1) To the court's action in overruling defendant's motion for peremptory instruction and for judgment non obstante, the undisputed evidence showing that prior to executing the settlement agreement and approval thereof by the Board, plaintiff knew in her own mind that her eyes were not all right, and therefore she could not have relied on the statements made by defendant's agents. (2) There was no fraud practiced on plaintiff by defendant's agents as a matter of law, and the court erred in not directing a verdict accordingly. (3) The jury answers to issues 6 and 11 (to effect that when plaintiff signed the settlement agreement, she believed the statement made to her by Dr. Bates and claim agent Gilmore) are contrary to the uncontroverted evidence, or at least to the overwhelming preponderance of the evidence, hence a submission of these issues was error. (4) Further error was involved in the court's submission of issue No. 1, in that, it was duplicitous and assumed that plaintiff had sustained an injury in course of employment. (5) Issues 6 and 11 were erroneously submitted because each assumed a material fact in issue and was a comment on weight of the evidence. (6) The court's charge nowhere inquired as to whether any advices or representations claimed to have been made were material. (7) The court erred in refusing to submit certain of defendant's requested issues as will be hereinafter noted.

Appellant's basic ground for reversal is reflected in answers of plaintiff upon cross-examination, oft repeated, of which the following testimony is typical:

"Q. You testified yesterday evening after Dr. Bates discharged you, you were still having trouble with your eyes? A. Yes, sir.

"Q. And you knew in your own mind, after leaving Dr. Bates, your eyes were still causing you trouble? A. Yes, sir, in my opinion.

"Q. And that was your opinion just before and at the time you made the settlement with Mr. Gilmore? A. I felt within myself.

"Q. It was your own opinion that your eyes were not progressing and not getting well? A. That is what I thought.

"Q. That is what you thought before and at the time you made this settlement? A. Yes, sir.

"Q. That is right, isn't it? A. Yes, sir. * * *

"Q. As I understood, that you knew in your own mind before and at the time you made the settlement you were still having some trouble with your eyes? A. In my own mind.

"Q. That you were still having trouble with your eyes—in your own mind. That's right, isn't it? A. Yes, sir.

"Q. Of course you thought in your own mind and in your opinion that you were still having trouble with your eye, that's right? At the time of the settlement? A. No. The reason I made the settlement was because I was authorized by Dr. Bates to do so.

"Q. But in your opinion you were still having trouble with your eyes? A. Yes, in my opinion I was still having trouble.

"Q. Of course Dr. Bates told you it was his opinion that your eyes were all right? A. Yes, sir.

"Q. That's right? A. Yes, sir."

The testimony in general of plaintiff, a widow, was that she had suffered the particular injury in June 1945, when steel dust and shavings from a machine she was operating at Hardwicke-Etter Shell Plant were blown into her eyes; entering into a compromise settlement agreement under Workmen's Compensation Law, Vernon's Ann.Civ.St. Art. 8306 et seq., for $120, August 18, thereafter. At the outset, appellee had made report of injury to the first aid nurse who said she should go to either Dr. Carter or Dr. Bates, plaintiff selecting the former; was then given a written slip, signed by the nurse, with Dr. Carter's name on it, stating that she was an employee. After staying under treatment for two weeks, she was dismissed by Dr. Carter with the statement that she was all right. Mrs. Aiken then reported back to the Company manager, saying she was not fully satisfied with condition of eyes, being thereupon advised to see Dr. Bates, the manager calling this doctor and arranging for treatment. Further testifying, claimant said she remained under care of Dr. Bates for some five weeks, not working in meantime on account of eyes and headaches; that toward the end of such period she was visited by Mr. Gilmore, claim agent for defendant, who wanted to discuss a settlement of claim if she had been dismissed by Dr. Bates, stating that he had been so informed. Appellee denied this, answering that she had another appointment the following Monday; that Gilmore then left, saying he would see the doctor; coming back on Saturday, with the same information. Plaintiff again questioned the statement, whereupon Gilmore asked her to call the doctor on the 'phone, which she did; that she recognized the voice of Dr. Bates, who told her that she should have been already advised about a dismissal, then dismissed her, saying that her eyes were all right and "It would be all right for me to settle." The report of Dr. Bates to defendant insurer, dated August 22, 1945, recites in part: "At the time of the present writing she (Mrs. Aiken) has fully recovered and has been dismissed as ready for returning for duty."

On first going to the doctors, as appellee testified, bandages were placed over her eyes, which were much improved upon removal of the dressing; that after some weeks the infection began to subside, eyes getting in better condition than during earlier period of treatment; that she had confidence in Dr. Bates and his judgment and would not have signed the settlement papers if she had not believed what he said; Mr. Gilmore also telling her that Dr. Bates had said her eyes were all right and for her to settle, which statement she also believed and relied on in executing the release, reciting in part: "I have now recovered and have entered into this compromise settlement agreement to settle this claim for the sum of $110 with the Insurance Company." Plaintiff testified further that the statement made by Dr. Bates concerning condition of eyes was not true; that they seemed to get worse shortly thereafter, with continuing blur in vision since injury.

Dr. Spencer Davis, Dallas diagnostician, testified that appellee was slowly losing the use of eyes due to deterioration of optic nerve; that he found scratches on eyeball surface, both eyes infected, with enlarged blood vessels, infection going down to corneal margin; that plaintiff had photophobia, finding evidence of injury to eye cornea by particles of steel; that her trouble was slow deterioration of optic nerve and inability of eyes to fuse images; that the defect was in the nerve and could not be cured by glasses, and that the injury sustained at the shell plant reasonably caused the condition found.

Appellant did not rebut above testimony of Dr. Davis, nor did Gilmore or Dr. Bates testify. In other words, the case closed at the conclusion of plaintiff's evidence in chief.

■ This action is based on the well-settled equity doctrine that representations of an existing fact or condition by releasee's doctor, if relied upon by releasor, are sufficient grounds for avoidance, if the representations are proved to be untrue in fact.

36 T.J., p. 809, sec. 13. It is the primary contention of appellant, however, that, as a matter of law, plaintiff could not have relied on the statement of Dr. Bates, since it appears without dispute that prior to signing the settlement agreement and approval thereof by the Industrial Accident Board, she knew in her own mind that her eyes were not "getting well." But plaintiff also testified to having confidence in the judgment of Dr. Bates; that her condition had progressively grown better under his care; that she would not discuss settlement with Gilmore until after a telephone conversation with the doctor, and signed the release believing and relying on the latter's statement that her eyes were all right. Undoubtedly issues of fact suggestive of fraud are raised in claimant's testimony as a whole. After all, the transaction was between physician and patient; and, despite her doubts and fears, it was still a jury question of whether plaintiff was influenced by the contrary advice of Dr. Bates, then signing the release. "The fact that the releasor has doubts as to the correctness of the representations of the physician of the releasee regarding the extent of his injuries will not prevent the setting aside of the release, on the theory that in executing it the releasor acted on his own judgment, and not on that of the physician, if in fact the representation of the latter did in fact influence him in making the settlement." 48 A.L.R. Annotations, p. 1521; Viallet v. Consolidated Ry. & Power Co., 30 Utah 260, 84 P. 496, 5 L.R.A.,N.S., 663–667.

The quoted rule is implicit in all Texas cases of a factually similar background; being but a corollary to the fixed premise here that Dr. Bates had treated releasor for several weeks, and was therefore, with his superior knowledge, in better position to ascertain and determine the true condition of her eyes than was even plaintiff herself.

In Fort Worth & R. G. R. Co. v. Pickens, Tex.Civ.App., 153 S.W.2d 252, 254 (reversed on other grounds), 139 Tex. 181, 162 S.W.2d 691, it was held that where release was signed "while still complaining of his injuries", appellee executing same after "the doctor told him he could go back to work, and that he could see no reason why he was not well. * * * The contentions of appellant that there was no jury question raised, and that under the undisputed evidence there was not sufficient ground upon which to set aside the release, are overruled."

In Missouri K. & T. R. v. Haven, Tex. Civ.App., 200 S.W. 1152, 1153, writ refused, the holding was that: "The representations in question were made to appellee after Drs. Webb and Lott had treated him about two months, and just before he executed the release, and were that the injury to his leg was only temporary; that, while it was still slightly swollen, his leg 'was all right and was well'; that appellee could safely go back to his work as a section foreman in a few days; and that the swelling in his leg would disappear 'as quick as he got out and went to work'. It appeared from the testimony that, instead of passing away, as the doctors said it would, the swelling in appellee's leg increased; that his leg gradually grew worse, and at the time of the trial was in a condition which probably would necessitate its amputation to save his life. * * * It seems to us it cannot fairly be said that the real condition of appellee's leg was a matter equally open to him and the trained experts who had treated it for two months, nor that 'the means of deriving information upon which a fair judgment' as to its condition could be predicated were equally open to him and them."

Above discussion in effect disposes of point 2 that the answer to issue 6 (plaintiff's belief in the advice of Dr. Bates) is contrary to undisputed evidence, or at least to the overwhelming preponderance of the evidence. Similarly, appellant's point that the jury answer to issue 11 (plaintiff's belief in the advice of defendant's claim agent) was against all uncontradicted evidence, is without merit. Even assuming for the moment that Dr. Bates was not the doctor for insurer (and evidence already narrated tends to show that he was), the further issue was clearly raised of the claim agent's making use of the same advice in procuring a release; the jury's affirmative finding thereon constituting legal fraud suf-

ficient in itself to avoid the settlement. Lipscomb v. Houston Electric Co., Tex.Civ. App., 149 S.W.2d 1042; Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464; Jones v. Traders & General Ins. Co., Tex.Civ.App., 188 S.W. 2d 739.

■ The point is urged that such medical advice was in the nature of an opinion, made in good faith, and therefore not culpable. No argument should be required to demonstrate that the statement of Dr. Bates to plaintiff was with reference to a present physical condition and, if false, was actionable, even if innocently made. Graves v. Hartford Accident & Indemnity Co., supra.

■ Appellant's next several points relate to issues 1, 6 and 11, which are quoted: (1) "Do you find from a preponderance of the evidence that the plaintiff, Bertha Aiken, received the injury in question in the course of her employment on or about June 28th and June 29th, 1945?" (6) "Do you find from a preponderance of the evidence that at the time plaintiff signed the compromise settlement agreement she believed the advice, if any, made by Dr. I. C. Bates, if you have so found in answer to Special Issue No. 3 concerning her injury?" (11) "Do you find from a preponderance of the evidence that at the time plaintiff signed the compromise settlement agreement she believed the advice, if any, made by defendant's claim agent if you have so found in answer to Special Issue No. 9 concerning her injury?" Issue 1 is said to be duplicitous and multifarious, as presenting two questions of fact—(a) that plaintiff sustained injury; (b) that such was sustained in course of employment. Even if subject to the objections made, the error was clearly harmless because each of the facts inquired about was susceptible of but one answer, and the assumption that plaintiff did sustain injury had support in undisputed testimony. "The error may be harmless also * * * where the uncontradicted evidence requires that each of the issues be answered similarly." 41 T.J., p. 1103; Kansas City Life Ins. Co. v. Fisher, Tex. Civ.App., 83 S.W.2d 1063. And, conversely, under the same uncontradicted evidence, if appellee sustained the particular injury, it

was naturally perforce of her employment; the only and ultimate issue then remaining for the jury was whether the injury in question was sustained. Texas Employers' Ins. Ass'n. v. Coulter, Tex.Civ.App., 35 S.W.2d 1082. Likewise, the objections raised to form of issues 6 and 11 are not tenable.

■ Appellant objected and excepted to the charge because of the court's refusal to inquire whether any advice or representation claimed to have been made was material. Issues 7 and 12, to which the objection was obviously leveled, are in substantially the same form as that quoted in Broaddus Co. Inc. v. Binkley, 126 Tex. 374, 88 S.W.2d 1040, and there expressly approved. With an issue worded in that form, says Judge Taylor, use of the words "material inducement" or submission of a mixed question of law and fact may be avoided.

■ In points 9, 10 and 11, appellant complains of the court's refusal to submit requested issues, in substance, viz.: (1) That plaintiff's incapacity was not solely due to the injury allegedly received; (2) to what extent, if any, the claimed incapacity was due to a prior injury; (3) whether or not plaintiff knew in her own mind that her eyes were not all right (a) prior to time the settlement agreement was approved by the Board; (b) prior to the time she executed the compromise agreement. Defendant filed no pleadings in support of the affirmative matters presented in above requested issues; as already stated, insurer's answer consisting only of general demurrer, denial, and pleading validity of this release. Plaintiff's cause of action herein was for rescission of written agreement on ground of legal fraud, to which the same rules of procedure are applicable as pertain to any other equitable proceeding. Texas rules 94 and 279 definitely provide that a party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part. Safety Casualty Co. v. Teets, Tex.Civ.App., 195 S.W. 2d 769 writ refused. Of course defendant was entitled to argue before the jury the contentions reflected in subdivision 3 above, as adverse to plaintiff's theory, but under

its own defensive pleading a further affirmative submission thereon may be properly refused.

These points of appeal not disclosing error of a reversible nature, the judgment under review must be affirmed.