## LIBERTY MUT. INS. CO. v. GERALD.
### No. 12242.

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1948.

Eugene J. Wilson, of Houston, Tex., for appellant.

Arthur J. Mandell, of Houston, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This suit, for rescission and cancellation of a written compromise settlement of a compensation claim, on the ground of fraud or mistake, was instituted by Richard Gerald against the Liberty Mutual Insurance Co. in the district court in order to open the way for a review of his claim for compensation before the Texas Industrial Accident Board which had already approved the settlement agreement.

On February 28, 1946, while engaging in his employment as oil-field "rigger" for Eastern States Petroleum Co., Inc., Richard Gerald, 57, was moving a heavy metal tube, of a kind commonly used in refineries; as he stooped or squatted and slid the tube, he suffered a back injury. Thinking it was only a minor strain, he did not immediately seek medical assistance but retired to his bed. A day or so later, he requested his employer to send around a doctor. Eastern States arranged with their compensation insurance carrier, the appellant in this action, to handle the matter, and Dr. F. B. Eidman, employed by the insurance company, took over Gerald's treatment. After treating the plaintiff-appellee for several weeks, Dr. Eidman released him for return to active employment. At that time he gave Gerald a certificate which read:

"3/30/46
"To Whom It May Concern:
"This is to certify that Mr. Gerald has been under my professional care for the treatment of Sacro-iliac Strain. He is now able to return to work and resume his usual duties.
"Yours truly,
"(S) Dr. F. B. Eidman."

Gerald then executed, in the office of the Liberty Mutual, an instrument which, according to his testimony, he believed to be a receipt but which in reality was a compromise compensation settlement and release. He returned to work, but after a few days was discharged because he was unable to perform his duties. On or about April 8, 1946, the Industrial Accident Board of the State of Texas issued an order approving the compromise and so notified Gerald. This, again according to his own testimony, was the first time that he was aware that he had signed a compromise settlement agreement. He consulted an attorney and was referred by the attorney to another doctor; when that doctor's report brought the serious nature of the injury to his knowledge, Gerald advised the insurance company. Shortly after receiving the Industrial Accident Board's notice of approval and after consulting his attorney, he was tendered by mail a check for $100 from the insurance company; he immediately refused and returned it, and appealed to the Board for relief. The Board, having once approved the settlement, found itself without jurisdiction. Gerald thereupon brought this action for rescission. At the close of the evidence, defendant moved for an instructed verdict; the motion was overruled, and the case was submitted to the jury on special issues. Adopting the jury's answers to the questions propounded, the court below entered judgment setting aside the compromise settlement agreement and referring the claim again to the Industrial Accident Board for determination on its merits. This appeal followed.

The jury, in answer to the special issues presented to it, found that Dr. Eidman had told the plaintiff he was able to go back to work and to resume his duties; and that Gerald believed and relied on this statement and would not have executed the compromise agreement here in question had it not been for Dr. Eidman's statement. The jury also found that Gerald had no knowledge of the contents of the release when he signed it; that the Liberty Mutual representative did not explain the contents to him, as appellant contended she did; and that he believed he was signing only a receipt for $100.

Whether Gerald knew what he was signing when he executed the compromise is immaterial. We may assume that under the facts as he believed them at the time he would have been willing to sign for what was due him, waiving further payments. The pertinent question for decision centers upon the genuine significance of and the proper effect to be given to the representations made to Gerald by agents or employees of the appellant and the consequence of his reliance on those representations.

The statements made by the doctor and Gerald's reliance on them, as well as the statement attributed to Liberty Mutual's representative that Dr. Eidman reported Gerald able to go back to work and the latter's reliance on that statement, in agreeing to accept the $100 compensation, constitute issues of fact. While the suit is in equity and was triable by the court below, the court could, as it did, use an advisory jury in resolving the above fact issues.* Unless clearly erroneous, these findings by the court with advisory jury are binding upon us. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Upon learning his true physical condition, plaintiff's consistent and positive conduct, that is, advising the insurance company of his condition; refusing and returning the check, which, had it been accepted, would have estopped him to question the compromise; and applying for relief to the Industrial Accident Board without delay—substantially supports his contention that his willingness to enter into the agreement was based on misstatements of fact, which, at the time, he had no reason to believe were other than true and correct statements. Conceding that the misstatements of fact were honestly made, yet in the light of the lower court's findings plaintiff made out a case for rescission.

In Williston on Contracts, Rev. Ed., Vol. V, § 1500, we find:

"Rescission is allowable for honest misrepresentation.

"It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, for though the representation may have been made innocently, it would be unjust to allow one who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations."

A case similar to the one now before us and following the rule laid out above was decided by the Court of Civil Appeals of Texas (Ft. Worth) in Associated Employers Lloyds v. Burns, 197 S. W.2d 584. In introduction, McDonald, Chief Justice, said:

"This is a suit by the employee to set aside a compromise settlement of a claim for workmen's compensation. It is alleged that the employee was induced to make the compromise by reason of false statements made to him concerning his physical condition by the insurer's physician. There is no claim that such statements were made by the physician with knowledge of their falsity, but only that the statements were false in fact.

" * * * About six weeks after the date of the accident the insurer's physician told the employee that he had recovered and could go back to work, and wrote to the insurer a letter reciting that the employee 'has recovered and there is no permanent disability.' * * *"

In disposing of the case, the court stated:

"We consider that there was evidence tending to show a misrepresentation by the physician as to the employee's physical condition. It is not contended by the insurer and there is no proof to show that the physician knew that his statement was false, or that there was any intention on his part to deceive the employee. His statement was not merely an expression of an opinion, but was a positive statement as to a present existing fact. He said that

---

*Rule 39 (c), Federal Rules of Civil Procedure; Vosburg Co. v. Watts, 4 Cir., 221 F. 402, 408; (American) Lumbermen's Mutual Casualty of Illinois v. Timms & Howard, Inc., 2 Cir., 108 F.2d 497; 3 Moore's Federal Practice, 3031.

the employee had recovered, and that there would be no permanent disability. Even if it could be said that his prediction that there would be no permanent disability, if standing alone, would have been merely an expression of opinion, his statement that the employee had recovered was a statement of fact. * * *"

See also Associated Employers Lloyds v. Aiken, Tex.Civ.App., 201 S.W.2d 856, and the discussion in 36 Texas Jurisprudence, § 13, p. 809. Under both the general law and the law of Texas, rescission of agreements to compromise, such as the one before the court, is favored when it is found that there was misrepresentation of a material fact even though such misrepresentation was innocent.

The judgment appealed from is affirmed.