**TRAVELERS' INSURANCE CO. v. MABRY et al.**

No. 12820.

United States Court of Appeals
Fifth Circuit.

Jan. 19, 1950.

Rehearing Denied Feb. 23, 1950.

Elmer H. Parish, Harold Jones, Wichita Falls, Texas, for appellant.

Kearby Peery, Philip S. Kouri, Wichita Falls, Texas, for appellee.

Before HUTCHESON, WALLER and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

In the trial Court, Mrs. Francine Mabry, joined by her husband, sought and obtained by the Court findings[1] and judgment of cancellation of a compromise settlement

1. The Court entered findings of fact and conclusions of law as follows:

"1.

Francine Mabry was an employee of General Mills at Wichita Falls, Texas. In the regular course of her employment on October 4th, 1947, she suffered an injury when an hundred-pound sack of flour was in her arms and she was suddenly twisted as a car unexpectedly moved.

agreement of her claim to workmen's compensation benefits arising from an injury she sustained in the course of her employment. Her action was predicated upon the claim, and evidence offered in support thereof, that the compromise settlement agreement was induced by the misrepresentation of the physician to whom she was sent by the employer following the accident, and her own ignorance of her physical condition and her rights to compensation. Appellant strenuously insists that the findings and judgment setting aside the compromise settlement agreement may not stand because legally unsupported by evidence; that the action of appellee in cashing the check paid pursuant to the agreement constituted an estoppel and ratification of the settlement; that the plaintiffs were guilty of laches; that the trial Court erred in his oral opinion in giving weight to the inadequacy of the consideration; in his conclusions of law finding that the plaintiffs did not know what their rights were; and, finally, that the judgment was erroneous because the evidence failed to show good cause for the plaintiffs' failure to file a claim for compensation within the six months' period provided by the Workmen's Compensation Act of Texas, Vernon's Ann.Civ. St. art. 8306 et seq., and therefore failed in this proceeding to establish her right to any additional compensation than that paid under the settlement agreement.

"2.

She did not know that her employer carried Workmen's Compensation. She did know that she had available hospitalization. When she advised her employer that she was injured, he sent her to the compensation doctor who ministered to her upon three different occasions, furnishing her with a corset and medicines, also with the opportunity of consulting another doctor in the same clinic. That those two physicians advised her she was suffering from arthritis. That the one to whom she had been first sent, advised her that, in his opinion, it was not a compensable injury under the Workmen's Compensation Act.

"3.

Without any suggestion or invitation from her, the defendant's claim agent visited her during the rest period at her home, she being employed at nights, and dictated a settlement agreement and later paid her the sum of $155.00. That her husband had no part in such agreement, and did not sign the same, but did tell her that since she had signed the agreement, she had just as well go forward and accept the check which later came to her.

"4.

That she did not know that she had arthritis prior, nor did she know that it was compensable if, in truth, an injury did awaken it and cause it to be disabling.

"5.

That she was ignorant of her rights, and that she relied upon the statement of the doctor to which her employer had sent her, who was the physician of the defendant, that her situation was not compensable.

"6.

That a few weeks thereafter her situation became such that she could not and has not worked since. She is twenty-eight years old; has been married nine years. Her husband is and was a member of the Armed Forces during the recent war and was at the time of these happenings in a school for a GI student.

"7.

That the $155.00 was community property. That the notary was not present and did not take her acknowledgment except, that a person over the telephone told her he was a notary and asked her if she acknowledged the settlement. The settlement paper was dated August 18th, 1948. That she worked off and on during the time she was visiting the doctors, taking the treatment and wearing the corset an hour or so at a time until March 28th, 1948 when she begun (sic) to have fever with her pain.

"8.

A Dr. Hargreaves who examined her on March 8th, 1949, reports total disability by reason of injuries to the pelvis and spine. The first doctor to whom she was sent by her employer, reported to the defendant that her injury was acute and involved substantially the same region; there were inflammatory processes somewhere in the body.

"Conclusions of Law.

"That the wife is entitled to have the settlement set aside because of ignorance of her condition and because of reliance upon the statement of the physician and because of a lack of knowledge of her rights."

We think the findings of fact and conclusion of law of the trial Judge are supported by the evidence. It appears that following her injury and examination by the defendant's doctor, she was advised, that while she was suffering from arthritis, this was not compensable (evidently because not the result of the injury). On June 21st, 1948, she returned to the defendant's doctor giving a history of continued back pain of such severity that she was unable to continue to work, and remained in the hospital from June 23rd until July 9th, 1948, being last seen by this doctor on July 28th, 1948, "at which time she was considerably improved and felt that she was ready to return to some type of work. She was informed of the nature of her back pain at the present time and was told that this was not compensable." This quoted summary is from a letter from the doctor to the insurance carrier. Thereafter, Mrs. Mabry returned to work until the first part of September when she quit work because of physical inability to continue. During the month of August, she had a conversation with an adjuster for the insurance carrier. Thereafter she consulted a physician of her selection. From him she received no knowledge contrary to what she had been told by the defendant's doctor, and the Court found she relied upon the latter's representation. She thereafter, on August 18th, executed a compromise settlement agreement which was approved by the Industrial Accident Board, and thereupon a check for $155.00 was mailed to the injured employee. Her husband had no knowledge of the execution of the compromise settlement agreement until the receipt by his wife of the check. He thereupon attempted to secure legal advice, and though the attorney secured the file, he was busy and never gave any advice. However, the husband received from the attorney the draft and settlement receipt, and being of the opinion the matter was already closed because his wife had already signed the settlement agreement, stated that "she might as well go ahead and cash the check." Both husband and wife testified that they had no knowledge of her rights under the compensation law.

We have not endeavored to state the evidence in full detail, but we conclude that it is sufficient to support a finding by the trier of the facts that misrepresentations, even if innocent, were made to Mrs. Mabry about a matter of which she was ignorant.

In order that the complainant may be entitled to set aside the compromise settlement agreement, it is not necessary that the misrepresentations should amount to actual fraud. Associated Employers Lloyds v. Aiken, Tex.Civ.App., 201 S.W. 2d 856; Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464, 467; Liberty Mutual Insurance Co. v. Gerald, 5 Cir., 170 F.2d 917. The evidence in this case is sufficient to authorize a finding by the trial Court that the compromise settlement agreement had been induced by an innocent misrepresentation of a material fact made to the complainant by an agent or employee of the defendant, which in fact was false, but was relied upon by the complainant. Under the principles ruled in the cases just cited, this is sufficient to sustain the judgment setting aside the settlement agreement.

While she knew that she had been injured, she was informed that it did not result from the accident; she was able to return to work until June, at which time she was disabled but was again informed that her disability did not result from the injury and was not compensable. She relied upon this misrepresentation in the execution of the settlement agreement, the compensation for which embraced the time she had lost from work. At the time she cashed the draft and signed the settlement agreement, she had no additional knowledge of the true cause of her disability, and this conduct therefore presented no additional prejudice to, or waiver of, her rights. From this point on, her failure to take affirmative steps to assert her rights relates to the merits of her ultimate claim for recovery, rather than to the right to have the settlement agreement set aside, or in other words, to the necessity of showing what might be denominated a *prima facie* right of recovery of compensation

in excess of that received under the settlement agreement. This would require in this case some showing of good cause for delay in filing the claim. It seems clear that the circumstances to which we have alluded, that is, ignorance of the injured employee of the facts and her rights which are sufficient to authorize the setting aside of the settlement agreement, likewise support the implied finding for the purpose of the order setting the settlement agreement aside that there was "good cause" for failing to file a claim. It is undisputed that the employer had notice of the injury within two days thereof, and therefore full opportunity to investigate the circumstances surrounding the accident and injury. After the approval of the compromise settlement agreement by the Industrial Accident Board, the claimant was excused from filing a claim for compensation because thereafter, under the Texas authorities, the Board had no jurisdiction to act until the agreement had been duly set aside. Kennedy v. Texas Employers Ins. Ass'n, Tex.Civ.App., 121 S.W. 2d 434, 439; Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081. Clearly, under the evidence, the issue of good cause for not sooner filing her claim was one for the trier of the facts. Maryland Casualty Co. v. Cobb, 5 Cir., 131 F.2d 603; Hayes v. Commercial Standard Ins. Co., Tex.Civ.App., 140 S.W.2d 250. In the present case the finding of good cause is clearly implicit and inherent in the ultimate finding of the Court that the settlement agreement should be set aside.

What we have said sufficiently disposes of the appellant's assignments of error based upon estoppel and ratification. It does not appear when the complainant ascertained the facts disclosing that her injury resulted from the accident. However, under the circumstances here, the delay in filing suit, apparently around the first of March, 1949, after the final execution of the settlement agreement on September 20, 1948, does not establish laches as a matter of law. The evidence is sufficient to sustain the findings of the trial Court that the complainants did not know their rights. Complainants show at least a *prima facie* right to recover compensation in excess of that received from the compromise settlement. The rule invoked by the appellant, that an employee seeking to set aside such a settlement must show that "but that for the settlement he would have received more under the statutory schedule," citing Vol. 45, Texas Jurisprudence, page 705, par. 240, and Indemnity Ins. Co. of North America v. Sterling, Tex.Civ.App., 51 S.W. 2d 788, does not require the Court in which the proceeding to set aside is pending to finally adjudge the existence of good cause for a filing subsequent to the statutory period of six months. Any such finding is not binding upon the Industrial Accident Board or the Courts in considering the Board's subsequent finding or award. This is recognized by this Court in Maryland Casualty Co. v. McWilliams, 175 F.2d 475, 476, in which it appears that the trial Court in setting aside a settlement agreement, expressly stated that his findings and conclusions were not intended to "shape or control the findings and conclusions before the Industrial Accident Board or before any Court to which the matter may be appealed." This Court affirmed, and stated that it was the duty there of a Court of Equity to set the compromise settlement aside "in order that such full and further inquiry as the Industrial Accident Board of the State of Texas, or any court of appropriate jurisdiction, may see fit to make as to the cause, extent, and duration of the plaintiff's injury." Each case must of course stand upon its own facts and findings. We hold that the facts of this case are sufficient to support the judgment of the trial Court setting aside the compromise agreement to effectuate the result, as orally announced by him, "I think it should be set aside and let the Board act on the matter, freely, after this is set aside, then determine whether this young woman has any rights under the compensation law."

The judgment of the trial Court being otherwise fully supported, the oral statement of the Judge that the consideration of the settlement was inadequate, presents no reversible error.

Since we conclude that for the reasons stated the judgment should be affirmed, it is unnecessary to consider the questions so

vigorously argued by the appellee, and as vigorously denied by the appellant, that since the wife was not joined by the husband in the settlement agreement, it was for this reason invalid.

Judgment affirmed.