ASSOCIATED EMPLOYERS LLOYDS, Appellant,

v.

Joe B. HOWARD, Appellee.

No. 3343.

Court of Civil Appeals of Texas.

Waco.

March 22, 1956.

Rehearing Denied April 12, 1956.

Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker, Ed Reichelt, Fort Worth, Black & Stayton, Austin, for appellant.

Boyd & Boyd, Denton, W. C. Culp, Gainesville, for appellee.

HALE, Justice.

This suit was brought by Joe B. Howard, appellee, against Associated Employers Lloyds, appellant, to set aside a compromise settlement agreement of a claim for workmen's compensation on the grounds of fraud and mistake. The case was tried before the court below without a jury and resulted in judgment for appellee. No request was made for findings of fact and conclusions of law and none were filed.

Under appropriate points in its brief, appellant says in effect that the trial court erred in setting aside the compromise settlement because there was no evidence, or, in the alternative, not sufficient evidence, of actionable fraud on its part in procuring the compromise settlement; because appellee was estopped from denying the validity of the compromise settlement; and because there was no evidence, or, in the alternative, insufficient evidence, that appellee had a meritorious claim for compensation beyond that for which he had been paid by appellant.

The evidence shows that appellant was the insurance carrier for Kimbell-Diamond Milling Company under the Texas Workmen's Compensation Act on and prior to January 5, 1952; that on the latter date, appellee was an employee of the milling company and, while acting in the course of his employment at Denton, he was handling a 100 pound bag of feed when he felt a stinging sensation in his stomach; that a short time thereafter he was taken by his employer to the Denton County Hospital and Clinic, where he underwent radical surgery performed by Dr. Holland for a perforation of his stomach; that appellant began the payment of workmen's compensation benefits to appellee shortly after the operation, at the rate of $24.75 per week; that appellee returned to work on or about April 18, 1952; that on April 22, 1952, appellee signed an instrument reciting, among other things, that he had been paid compensation to that date in the sum of $321.75, that accrued medical and hospital expense had been or would be paid by appellant and that he agreed to compromise and settle his claim for workmen's compensation insurance for the sum of $35 to be paid in addition to the amount theretofore paid to him, such compromise settlement being made subject to the approval of the Industrial Accident Board; that on April 25, 1952, the Industrial Accident Board approved the purported compromise agreement; that on April 30, 1952, appellee signed an instrument acknowledging receipt from appellant of $35 in full compromise, settlement, accord and satisfaction

of all compensation and claims for compensation which he had by reason of the injuries received by him in the employ, of Kimbell-Diamond Milling Company; and that at the same time when he signed the receipt for $35, appellee endorsed a check from appellant payable to his order in the sum of $35 and collected the proceeds therefrom.

The evidence in the case indicates that appellee had not been released from the care and treatment being given him by Dr. Holland when he signed the compromise settlement agreement and receipt hereinbefore referred to. J. R. Coleman, Jr., an adjuster for appellant, called at the office of the Kimbell-Diamond Milling Company on April 22, 1952 and requested an interview with appellee. According to the testimony of appellee, Coleman asked him to sign some instruments which Coleman said was a "release to go back to work." Appellee testified that he signed these instruments without knowing the contents of the same and that he did not know he was signing a compromise settlement agreement. He testified that he could neither read nor write, other than to write his own name. Appellee's testimony is to the effect that he did not ask any questions as to why it was necessary for him to sign a "release to go back to work." On cross examination by counsel for appellant, he testified in part as follows:

"Q. You knew you didn't have to have any release to go to work, didn't you? A. Well, he said it was a release to go to work, that's all I know.

"Q. Well, you had been working for four days? A. Yes, sir.

"Q. What made you think that you had to have a release to go to work after you had been working? A. Well, I didn't know.

"Q. Huh? A. I didn't ask him no questions about it. That is what he said, and so I thought he knowed what he was talking about."

Appellant introduced in evidence a letter from Dr. Holland addressed to adjuster Coleman under date of April 16, 1952, in which he stated, among other things, that appellee was "discharged to resume his usual activities." This letter was filed with the Accident Board on April 25, 1952. However, on the trial of the case, Dr. Holland testified in substance that while he thought appellee was sufficiently recovered by the middle part of April from the cause and effect of his operation to do some light work, he did not think appellee was ever able to resume the heavy lifting he had been doing before the operation. Appellee testified that when he went back to work in April, the milling company put him back on the same job of heavy lifting which he had been doing before the operation. He continued to report from time to time to Dr. Holland for observation and treatment, and, after working intermittently over a period of less than one month, he was unable to continue in the discharge of the duties of his employment. Appellant resumed the payment of compensation benefits and continued to make weekly payments for four or five weeks. Appellee continued under the care and treatment of Dr. Holland until a second operation was performed in July of 1954, at which time Dr. Holland removed about three-fourths of appellee's stomach. This case was tried on March 28, 1955. Appellee testified that he had not been able to do any work since April of 1952, and Dr. Holland testified that in his opinion appellee would never be able to resume the character of work he was doing prior to the time of his first operation.

In the case of Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W. 2d 466, 468, the Supreme Court of Texas said:

"In a suit to set aside a compromise settlement on the grounds of fraud, the rules of common law applicable to suits for rescission and cancellation are applicable; Texas Employers Ins. Ass'n v. Kennedy, 135 Tex. 486, 143 S.W.2d 583; Traders & General Ins. Co. v. Bailey, 127 Tex. 322, 94 S.W. 2d 134; Wood v. Traders & General

Ins. Co., Tex.Civ.App., 82 S.W.2d 421, writ ref; Gibson v. Employers' Liability Assurance Corp., Tex.Civ.App., 131 S.W.2d 327, writ ref.

"In order for a plaintiff to have the release cancelled he must show, among other things, the false representations and that they were made by the defendant or his duly authorized agents; that plaintiff relied upon such representations; that he has been injured, that is, that he has a meritorious claim for compensation, and he must make a tender or show that his injury is greater than the amount paid or other facts which excuse a return of the amount plaintiff received when he executed the release sought to be set aside."

Adjuster Coleman testified that he had an interview with appellee in the office of Kimbell-Diamond Milling Company on April 22, 1952, but he denied that he had requested appellee at that time to sign certain instruments which evidenced a "release to go back to work." On the contrary, he testified in effect that he stated to appellee that the instruments which he was signing constituted a compromise settlement agreement for the sum of $35 which would have to be submitted to and approved by the Industrial Accident Board before appellant could pay the additional sum of $35. However, we cannot say that the testimony of adjuster Coleman was more credible or worthy of belief than the testimony of appellee as to the circumstances under which the compromise settlement agreement was signed.

■ After due consideration of the evidence as a whole, we think it was sufficient to warrant the trial judge in finding the existence of all the essential elements of actionable fraud on the part of appellant's adjuster in procuring the compromise settlement agreement as a proper basis for setting the same aside. Texas Employers Ins. Ass'n v. Kennedy, Tex.Com.App., 135 Tex. 486, 143 S.W.2d 583; Graves v. Hartford Accident & Ind. Co., 138 Tex. 589,

161 S.W.2d 464; Garsee v. Indemnity Ins. Co. of North America, Tex.Civ.App., 47 S.W.2d 654; Associated Employers Lloyds v. Aiken, Tex.Civ.App., 201 S.W.2d 856, (er. ref. n. r. e.); Liberty Mutual Ins. Co. v. Gerald, 5 Cir., 170 F.2d 917; Travelers Ins. Co. v. Mabry, 5 Cir., 179 F.2d 216.

■ Appellant's contention to the effect that appellee was estopped from denying the validity of the compromise settlement agreement is based upon the fact that on April 30, 1952, he signed an instrument acknowledging receipt from appellant of $35 in full compromise, settlement, accord and satisfaction of all compensation and claims for compensation which he had by reason of the injuries received by him while acting in the course of his employment with Kimbell-Diamond Milling Company. We do not think this contention is well founded. Appellee testified that when he received the check for $35, it was attached to some papers and he took the check to the bank in order to have it cashed, and was there told that he would have to sign the attached papers before the check would be paid; that he supposed the check was for some of the back payments that were due him; that he did not know the exact amount which had been paid to him in the past but that such payments had come at irregular intervals and in different amounts; and that he did not know such papers purported to evidence the receipt of $35 in settlement of his claims for compensation. In the case of Williams v. Texas Employers Ins. Ass'n, 135 S.W.2d 262, 264, (er. ref.) this court held that "full knowledge of the essential facts is a necessary prerequisite as a basis for estoppel. 17 T.J. 138." The evidence in the Williams case was very similar to the evidence in this case, and we think the prior holding of this court in the Williams case is conclusive against the contention of appellant with respect to the question of estoppel. See also Kennedy v. Bender, 104 Tex. 149, 135 S.W. 524; Winters v. Coward, Tex.Civ.App., 174 S.W. 940; Texas Harvester Co. v. Wilson-Whatley Co., Tex.Civ.App., 210 S.W. 574 (er. ref.);

Indemnity Ins. Co. of North America v. Sterling, Tex.Civ.App., 51 S.W.2d 788 (er. dis.).

■ Appellant's contention that there was no evidence, or, in the alternative, insufficient evidence, that appellee had a meritorious claim for compensation beyond that for which he had been paid, is based upon the further contention that appellee's incapacity to labor was not due to an accidental injury but to a duodenal ulcer. We overrule these contentions. In our opinion, the testimony of appellee was sufficient to warrant the trial court in finding that the act of appellee in lifting a 100 pound bag of feed while in the course of his employment was a producing cause of appellee's incapacity to labor, and that the duration and extent of such incapacity entitled him to compensation benefits in a sum far greater than the amount heretofore paid to him by appellant.

In addition to the testimony of appellee as to the circumstances under which he sustained his injury, the testimony of Dr. Holland was to the effect that when he performed the first operation on appellee on January 5, 1952, he not only found the patient had a perforation of his stomach but that he also had a duodenal ulcer. He made no effort in that operation to remove the ulcer. During the course of his examination, counsel for appellant propounded to the doctor the following question: "Now, am I correct in this, Doctor, that you don't know, you can't say whether or not any stress that he might have engaged in on January 5, 1952 was the producing cause of this condition?" To the foregoing question Dr. Holland responded as follows: "I can only draw you a picture and draw a conclusion from that, sir. If you had, like an old tire that had a weak spot in it, that will be much more likely to blow out if you ran over a rough spot than one would be that didn't have the weak spot in it. In other words, if you ran over a rough spot with a weakened tire and tube, it would be more likely to blow out than a normal tire was. If he had this ulcer—and I am sure he had this ulcer prior to January 5th—he picked up something heavy and with increased exertion it is reasonable to assume that this thin lining, outer lining of his stomach, would break under the strain or stress of picking that up. * * *" Dr. Holland further testified that the second operation which he performed on appellee in July of 1954, and at which time he removed about three-fourths of appellee's stomach, was but a continuation of the first operation which he performed on January 5, 1952. Although Dr. Holland did not remove the ulcer in the first operation, he attempted in the second operation to remove it completely.

In the case of Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357, the Supreme Court of Texas said:

"This court has settled the rule that liability for damages for personal injuries arising under the Compensation Law cannot be defeated by showing that the person injured was not a well person at the time of the injury. Nor will a recovery for such compensation be denied although it may appear that the injury received was aggravated by the effect of some disease existing at the time of the injury or occurring afterwards. Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W. 2d [72] 74."

Because we have concluded that there was no error in the judgment of the court below, all of appellant's points are overruled and the judgment appealed from is affirmed.